IN THE COURT OF APPEALS OF TENNESSEE
AT JACKSON
May 20, 2004 Session

**IN RE ESTATE OF JAMES A. CHAMPION, DECEASED**

**JAMES W. SMITH and ALEX SMITH, Children of James A. Champion,
and on behalf of MARY ALICE EPPERSON,
LINDA ANN WERSEL, WAYNE SMITH, TYRONE SMITH,
DARRYL CHAMPION, and MARK CHAMPION**
v.
**CARRIE BROYLES, as Executrix of the
Estate of James A. Champion, Deceased**

**An Appeal from the Chancery Court for Gibson County
No. 15308-P    George R. Ellis, Chancellor**

---

**No. W2003-02054-COA-R3-CV - Filed October 27, 2004**

---

This appeal challenges the chancery court's subject matter jurisdiction to hear a will contest. The petitioner daughter filed a petition to probate the last will and testament of her father. Other siblings filed an objection to probate, alleging that their father did not have the requisite testamentary capacity to execute the will. After a hearing, the chancery court rejected the siblings' claims and admitted the will to probate. Later, the siblings filed another petition contesting the will, again challenging testamentary capacity and, in addition, alleging undue influence. The chancery court certified the will contest to the circuit court. The circuit court granted summary judgment to the petitioner, finding that the issues raised by the siblings had been addressed in the former proceedings and were *res judicata*. The siblings then filed a Rule 60 motion in chancery court to set aside the order probating the will. The motion was denied. The siblings now appeal, arguing that the chancery court did not have subject matter jurisdiction to hear the will contest. We affirm, finding that the chancery court had concurrent jurisdiction with the circuit court to adjudicate a will contest.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Chancery Court is Affirmed**

HOLLY M. KIRBY, J., delivered the opinion of the Court, in which ALAN E. HIGHERS, J., and DAVID R. FARMER, J., joined.

Mark L. Agee and Jason C. Scott, Trenton, Tennessee, for the appellants, James W. Smith and Alex Smith.

Harold E. Dorsey, Humboldt, Tennessee, for the appellee, Carrie Broyles.

## OPINION

The decedent, James A. Champion ("Champion"), died of cancer on February 12, 2001, at the age of seventy-five (75). At the time of Champion's death, he had nine living children. His four daughters were born during his marriage,[1] and his five sons were born from his relationship with Annie Morgan ("Morgan"), with whom he lived for forty-two years. Champion and Morgan never married. Petitioner/Appellee Carrie Broyles ("Carrie") is one of Champion's four daughters.[2] Respondents/Appellants James A. Smith ("James") and Alex Smith ("Alex") (collectively, "Respondents") are two of Champion's five sons.[3]

On February 13, 2001, the day after Champion's death, James filed a petition for the administration of Champion's estate in the Chancery Court below. The petition averred that Champion died intestate, and that the gross value of his estate was approximately $69,000. The petition also listed each of Champion's nine children as his heirs at law. The petition requested that James be appointed as administrator of the estate. The Chancery Court immediately entered an order appointing James as the administrator of Champion's estate.

About two weeks later, on February 28, 2001, Carrie filed a petition to probate a document purporting to be Champion's Last Will and Testament. The petition stated that the Will was signed by Champion in his hospital room on February 5, 2001, one week before his death. Unable to sign his full name, Champion executed the will by marking an "X" on the appropriate lines. The Will provided that Carrie be appointed as the Executrix of the Will. The Will devised all of Champion's assets to Carrie and one of her sisters, Beatrice Champion ("Beatrice"). The Will made no reference to any of Champion's other seven children. On the day the petition to probate was filed, the Chancery Court entered a temporary restraining order, ordering James and Alex to refrain from selling, transferring, or otherwise disposing of Champion's property pending a final resolution of the matter.

On March 9, 2001, Respondents James and Alex filed an Objection to Probate, alleging that the Will was not the legal will of Champion and that Champion was not competent to make the Will at the time it was executed. Respondents averred that the Will presented by Carrie was "neither self-proving, notarized, nor a holograph." They alleged that "no such will could have been executed

---

[1]The name of Champion's wife, whom he never officially divorced, is not in the record on appeal.

[2]Champion's other three daughters are Beatrice Champion, Mary Alice Epperson, and Linda Ann Wersel.

[3]Champion's other three sons are Mark Champion, Tyrone Smith, and Darryl Champion.

and witnessed on [February 5, 2001], nor did the alleged witnesses, one of whom is the husband of Carrie Broyles, come to the hospital where James Champion was bed-ridden, sedated, and incapacitated." Finally, Respondents asserted that the "X" on the signature line of the Will was not Champion's mark.

On July 10, 2001, the Chancery Court conducted a hearing on the matter. At the hearing, several witnesses testified about the circumstances surrounding the execution of Champion's Will and about Champion's capacity to execute the document. The family's funeral director, Charles McCright ("McCright"), testified that he had the Will drafted at Carrie's instruction as part of the funeral home's service to the family. McCright said that he was present in the hospital room when Champion signed the Will, and that Champion was competent, that "he knew what was going on," and that he appeared to be alert. Beatrice also testified that she was present in the hospital room when Champion signed the Will, and that he was alert when he signed it. Crystal Hines, Champion's granddaughter, testified that she saw Champion on the day he signed the Will, and that he appeared to be competent. She said that Champion "knew what he was doing." The two persons who signed as witnesses to the Will, Chris Dennis and Michael Merriweather (Carrie's ex-husband), testified that Carrie read the Will to Champion in the hospital room, that Champion seemed to be in agreement, and that Champion made the "X" marks on the signature lines to execute the Will.

Respondents proffered the testimony of two of Champion's hospital nurses. The nurses both testified that Champion was too weak to sign the Will with a ballpoint pen, and that he had to use a felt-tip pen instead. One nurse said that Champion "knew what he was signing and he did want to sign it." One of Champion's daughters, Mary Epperson, testified that Champion was alert on the day he signed the Will, but that she did not see the document herself. Morgan, the mother of Respondents, also testified at the hearing. She stated that Michael Merriweather had told her that there was no Will "because James hadn't seen no will." She said that, earlier in the year, Champion had told her that everything he had belonged to his youngest son, Alex. Morgan testified that her name was on the deed of the house she shared with Champion, and that the house would pass to her directly regardless of the terms of the Will.

At the conclusion of the hearing, the Chancery Court approved the Will and admitted it to probate in solemn form. The Chancery Court appointed Carrie as the Executrix, consistent with the terms of the Will.[4]

On November 9, 2001, Respondents filed a petition in the Chancery Court contesting the Will, again alleging that, due to his serious health condition, Champion was incompetent to execute the Will at the time it was signed. The petition also alleged that Champion was subjected to undue influence in the execution of the Will. The petition requested that the Will contest "be certified to the Circuit Court for determination of its validity by jury trial." Respondents took the position that

---

[4]There is no written order signed by the trial court in the record on appeal. However, the clerk of the trial court executed a document in the record indicating that the trial court "approved [the Will] in open Court," and that Carrie was appointed as the Executrix.

the July 10, 2001 hearing had been limited to the issue of whether the signature on the Will was Champion's signature, and that the hearing did not rise to the level of a will contest.

On November 28, 2001, the Chancery Court entered a written order, consistent with its earlier oral ruling, admitting the Will to probate. In the order, the Chancery Court concluded that, based on the pleadings and on the July 10, 2001 hearing, the Will was "properly signed and witnessed," and that Carrie should serve as Executrix of the Will without bond, in accordance with the terms of the Will.

On January 10, 2002, the Chancery Court certified the matter to the Circuit Court of Gibson County for a jury trial, as requested by Respondents. On April 3, 2002, Carrie filed a motion for summary judgment, arguing that the July 10, 2001 hearing constituted a Will contest, and that Respondents' petition was barred by the doctrine of *res judicata*. On March 18, 2003, an order was entered in the Circuit Court, granting summary judgment to Carrie based on *res judicata* principles.[5] That order was not appealed.

On May 15, 2003, Respondents filed a motion in Chancery Court pursuant to Rule 60.02 of the Tennessee Rules of Civil Procedure to set aside the Chancery Court's order admitting the Will to probate and to open the matter for further proof. In the motion, Respondents asserted that they had asked the Chancery Court for a continuance of the July 10, 2001 hearing in order to procure medical evidence on Champion's testamentary capacity, but their request was denied by the Chancellor for the stated reason that such evidence would be more appropriate for a "will contest." In reliance on this statement by the Chancellor, Respondents argued, they later filed a separate petition for a will contest, requesting that the Chancery Court certify the case to the Circuit Court for a full jury trial. When the case was certified to the Circuit Court, however, the Circuit Court held that Respondents were barred from relitigating the issue of testamentary capacity because the issue had already been litigated and decided in the Chancery Court proceedings. Under the circumstances, Respondents argued, they were entitled to relief from the final judgment of the Chancery Court in order to present their medical evidence on the issue of testamentary capacity. On June 23, 2003, the Chancery Court conducted a hearing on the Rule 60.02 motion to set aside. On July 18, 2003, the Chancery Court entered an order denying the Rule 60.02 motion, stating that "the proper venue for this subject matter is the Court of Appeals." From that order, Respondents now appeal.

On appeal, Respondents argue that the Chancery Court below lacked subject matter jurisdiction to conduct the July 10, 2001 hearing on the "objection to probate," and that it was required to certify the issue to the Circuit Court. Therefore, they argue, the order admitting the Will to probate was void. Issues involving subject matter jurisdiction are questions of law, subject to *de novo* review. **Southwest Williamson County Cmty. Ass'n v. Saltsman**, 66 S.W.3d 872, 876 (Tenn. Ct. App. 2001). Questions of subject matter jurisdiction can be raised at any time in the

_____

[5]An order on the Circuit Court's decision was erroneously entered in the Chancery Court below on January 3, 2003, but the matter was corrected by an order entered in the Circuit Court on March 18, 2003.

-4-

proceedings, and may be raised for the first time on appeal. *National Advertising, Inc. v. McCormick Ashland City and Nashville R.R., Inc.*, 936 S.W.2d 256, 257 (Tenn. Ct. App. 1996).

Respondents' argument is based on the version of Tennessee Code Annotated § 32-4-101 in effect at the time of the July 10, 2001 hearing, which provided that, when a will is contested, "the court having probate jurisdiction over such last will or testament shall cause the fact to be certified to the circuit court . . . ." Tenn. Code Ann. § 32-4-101 (2001). However, the plain language of Tennessee Code Annotated § 32-4-109, also in effect at that time, clearly provided that the chancery court has concurrent jurisdiction to conduct a trial on the validity of a will, and that certification to circuit court is not necessary. That statute provided:

> Any court of record having probate jurisdiction, whether a chancery court or other court of record established by private or public act, has concurrent jurisdiction with the circuit court to conduct trials upon the validity of wills, all in the same manner and to the same extent as prescribed in this chapter for circuit courts, except that no certificate of the contest or certificate of the verdict and judgment shall be required in the absence of any referral to another court.

Tenn. Code Ann. § 32-4-109 (2001).[6] The Tennessee Supreme Court has recognized that the effect of section 32-4-109, promulgated in 1991, granted "chancery courts concurrent jurisdiction with circuit courts to try will contests." *In re Estate of Barnhill*, 62 S.W.3d 139, 142 (Tenn. 2001) (noting that, prior to 1991, circuit courts had exclusive jurisdiction over will contests). Accordingly, Respondents' contention that the Chancery Court below lacked subject matter jurisdiction to conduct the hearing on the will contest is without merit.

Next, Respondents argue that the Chancery Court should have granted their Rule 60.02 motion to set aside the order admitting Champion's Will to probate. A trial court's decision to deny a Rule 60 motion will not be reversed on appeal absent an abuse of discretion. *McCracken v. Brentwood United Methodist Church*, 958 S.W.2d 792, 795 (Tenn Ct. App. 1997).

Rule 60 provides in pertinent part:

> On motion and upon such terms as are just, the court may relieve a party or the party's legal representative from a final judgment, order or proceeding for the following reasons: (1) mistake, inadvertence, surprise or excusable neglect; (2) fraud (whether heretofore denominated intrinsic or extrinsic), misrepresentation, or other misconduct of an adverse party; (3) the judgment is void; (4) the judgment has been satisfied, released or discharged, or a prior judgment upon which it is based has been reversed or otherwise vacated, or it is no longer equitable that a judgment should have prospective application; or (5) any other reason justifying relief from the operation of the judgment. The motion shall be made within a reasonable time, and

---

[6]The current version of Tennessee Code Annotated § 32-4-109 is substantially the same.

for reasons (1) and (2) not more than one year after the judgment, order or proceeding was entered or taken. A motion under this Rule 60.02 does not affect the finality of a judgment or suspend its operation, but the court may enter an order suspending the operation of the judgment upon such terms as to bond and notice as to it shall seem proper pending the hearing of such motion. . . .

Tenn. R. Civ. P. 60.02. Respondents claim that their motion to set aside the Chancery Court's order should have been granted based on subsections (1) mistake, surprise or excusable neglect, (3) the judgment is void, or (5) any other reason justifying relief from the operation of the judgment.

As noted above, the Chancery Court order admitting the Will to probate was clearly not void; therefore, subsection (3) is not a basis for relief from the Chancery Court's judgment. With respect to subsection (1) (mistake) and (5) (any other reason), Respondents argue that the trial court made a mistake in conducting an incomplete hearing on the issues surrounding the will contest. The Chancery Court's mistake did not become evident, Respondents argue, until the Chancery Court later certified the matter to Circuit Court for a will contest. Respondents also claim that they erred in relying on the direction of the Chancery Court and in participating in the hearing on the objection to probate. When the mistakes were brought to the attention of the Chancery Court in the Rule 60 motion, Respondents argue, the Chancery Court should have exercised its power to clear up the "debacle" by granting them relief from the judgment under Rule 60 as a mistake under subsection (1) or under the catchall provision of subsection (5).

Respondents in this case did not appeal either the Chancery Court's order admitting the Will to probate or the Circuit Court's order dismissing their petition contesting the Will. Any alleged "mistakes" made by Respondents are not the kind that would justify relief under Rule 60. Furthermore, the catch-all provision of subsection (5) should be applied only in cases of overwhelming importance or in cases involving extreme circumstances or extraordinary hardship. *Federated Ins. Co. v. Lethcoe*, 18 S.W.3d 621, 624 (Tenn. 2000). This case does not present such extraordinary circumstances. Given the trial court's wide discretion in considering a Rule 60 motion, we cannot conclude that the Chancery Court abused its discretion in denying Respondents relief from the judgment under Rule 60.

The decision of the trial court is affirmed. Costs on appeal are to be taxed to Appellants James W. Smith and Alex Smith, and their surety, for which execution may issue, if necessary.

_____
HOLLY M. KIRBY, JUDGE