S05G0336. DOWIS et al. v. MUD SLINGERS, INC. et al.

(621 SE2d 413)

HINES, Justice.

This Court granted certiorari to the Court of Appeals in *Dowis v. Mud Slinger Concrete*, 269 Ga. App. 805 (605 SE2d 615) (2004), to consider whether the conflict of laws rule lex loci delicti should be retained in Georgia. For the reasons which follow, this Court will not abandon the traditional rule.

Johnny Edwin Dowis ("Dowis"), a Tennessee resident, was hired by a Missouri corporation, Mud Slingers, Inc. ("Mud Slingers"), whose president is Michael Clement Graves ("Graves"), to hang large sheets of precast plaster molding at a national chain hotel in Roswell, Georgia. Dowis was injured at the Roswell project when he fell four stories from the basket of a telescopic boom forklift operated by Graves.

Mud Slingers had workers' compensation insurance in Missouri, where Dowis filed his claim and received benefits. Dowis later filed

this tort action in Georgia seeking damages against Mud Slingers and Graves. Dowis argued that, under Missouri's workers' compensation law, he could collect benefits and bring a tort action against Mud Slingers and/or Graves. Applying the exclusive remedy provision of the Georgia Workers' Compensation Act, OCGA § 34-9-11 et seq., and the lex loci delicti rule regarding the applicable substantive law, the trial court granted summary judgment to the defendants. The Court of Appeals affirmed the grant of summary judgment, holding that lex loci delicti and the consequent application of Georgia's exclusive remedy provision precluded Dowis from maintaining his tort action in Georgia. In so doing, the Court of Appeals correctly noted that this Court has addressed the issue of the viability of the rule of lex loci delicti and has continued to apply it. *Sargent Indus. v. Delta Air Lines*, 251 Ga. 91 (303 SE2d 108) (1983); see also *Mullins v. M.G.D. Graphics Systems Group*, 867 FSupp. 1578 (N.D. Ga. 1994).

There are several principle approaches to the resolution of conflict of laws issues in tort cases. 16 AmJur2d Conflict of Laws § 124. The traditional approach, frequently referred to as the "vested rights" approach, was set forth in the Restatement (First) of Conflict of Laws and established the rule of lex loci delicti.[1] See ATLA-TORT § 3:21. Under this traditional rule, a tort action is governed by the substantive law of the state where the tort was committed. *Ga. Farm Bureau Mut. Ins. Co. v. Williams*, 266 Ga. App. 540, 541, n. 4 (597 SE2d 430) (2004). Subsequently, due in part to an attempt to accommodate the increased mobility of the population and interstate and international commerce, other approaches emerged which were perceived to be less territorial. *Hataway v. McKinley*, 830 SW2d 53, 57 (Tenn. 1992). These approaches have gained acceptance in deciding which state's substantive law should apply.[2] 16 AmJur2d Conflict of Laws § 124.

The first such approach is based upon a concept of "governmental interest."[3] Id. This approach, developed by Professor Brainerd Currie, involves an analysis of the respective interests of the involved

---

[1] The following cases from sister states apply the lex loci delicti rule: *Fitts v. Minnesota Mining & Mfg. Co.*, 581 S2d 819 (Ala. 1991); *Ling v. Jan's Liquors*, 703 P2d 731 (Kan. 1985); *Hauch v. Connor*, 453 A2d 1207 (Md. Ct. App. 1983); *Kemp v. Allstate Ins. Co.*, 601 P2d 20 (Mont. 1979); *Boudreau v. Baughman*, 368 SE2d 849 (N.C. 1988); *Dawkins v. State*, 412 SE2d 407 (S.C. 1991); *Rhoades v. Wright*, 622 P2d 343 (Utah 1980), cert. denied, 454 U. S. 897 (102 SC 397, 70 LE2d 212) (1981); *McMillan v. McMillan*, 253 SE2d 662 (Va. 1979); *Paul v. Nat. Life*, 352 SE2d 550 (W.Va. 1986); *Ball v. Ball*, 269 P2d 302 (Wyo. 1954). See 16 AmJur2d Conflict of Laws § 124, n. 15.

[2] There are variations of these approaches, but for the purpose of this analysis, the focus will be on the core concepts and not hybrid theories.

[3] The following cases have utilized a "governmental interest" analysis: *Wallis v. Mrs. Smith's Pie Co.*, 550 SW2d 453 (Ark. 1977); *Bernhard v. Harrah's Club*, 546 P2d 719 (Cal. 1976), cert. denied, 429 U. S. 859 (97 SC 159, 50 LE2d 136) (1976); *District of Columbia v. Coleman*,

states to determine the law that most appropriately applies to the issues in the case; controlling effect is given to the law of the jurisdiction which has the greatest concern with the specific issue raised in the litigation, unless a public policy exception dictates a contrary result. 16 AmJur2d Conflict of Laws § 129; see Brainerd Currie, The Disinterested Third State, 28 Law and Contemporary Problems 754 (1963). Specifically, this theory mandates that a court first identify the specific law in each state bearing upon the legal issue in dispute, then determine the precise policies which the respective laws were designed to serve, and finally, that the court examine the relationship of each jurisdiction with the litigation and determine whether the application of a particular state's law would be consistent with the purposes identified as supportive of that law. *Hataway v. McKinley*, supra at 58, citing Gregory E. Smith, Choice of Law in the United States, 31 Hastings L.J. 1041, 1047 (1987); B. Currie, Selected Essays on the Conflict of Laws (1963).

Another approach is that of "choice-influencing considerations"[4] espoused by Robert A. Leflar. Under this theory, five factors are examined: (1) predictability of result; (2) maintenance of the interstate and international order; (3) simplification of the judicial task; (4) advancement of the forum's governmental interest; and (5) application of the better rule of law. Robert A. Leflar, Choice-Influencing Considerations in Conflicts Law, 41 N.Y.U.L. Rev. 267 (1966); Robert A. Leflar, Conflicts Law: More on Choice-Influencing Considerations, 54 Cal. L. Rev. 1584 (1966).

A third alternative to the traditional doctrine is lex fori, which provides that the rights and liabilities of the parties are governed by the law of the forum.[5] *Hataway v. McKinley*, supra at 58.

Finally, a majority of the states that have abandoned the rule of lex loci delicti have embraced the formulation expressed in the Restatement (Second) of Conflict of Laws, which calls for an assessment of which jurisdiction has the "most significant relationship"[6] to

---

667 A2d 811 (D.C. Ct. App. 1995); *Gantes v. Kason Corp.*, 679 A2d 106 (N.J. 1996); *Padula v. Lilarn Properties Corp.*, 644 NE2d 1001 (N.Y. Ct. App. 1994). See 16 AmJur2d Conflict of Laws § 129, n. 42.

[4] The following cases have employed "choice-influencing considerations" to resolve a conflict of laws: *Clark v. Clark*, 222 A2d 205 (N.H. 1966); *Busby v. Perini Corp.*, 290 A2d 210 (R.I. 1972); *Zelinger v. State Sand & Gravel Co.*, 156 NW2d 466 (Wis. 1968). See 16 AmJur2d Conflict of Laws § 132, n. 48.

[5] The following cases have utilized a concept of lex fori: *Foster v. Leggett*, 484 SW2d 827 (Ky. Ct. App. 1972); *Olmstead v. Anderson*, 400 NW2d 292 (Mich. 1987). See *Hataway v. McKinley*, supra at 59.

[6] The following cases have applied the "most significant relationship" approach: *Ehredt v. DeHavilland Aircraft Co. of Canada, Ltd.*, 705 P2d 446 (Alaska 1985); *Bryant v. Silverman*, 703 P2d 1190 (Ariz. 1985); *First Nat. Bank in Fort Collins v. Rostek*, 514 P2d 314 (Colo. 1973); *O'Connor v. O'Connor*, 519 A2d 13 (Conn.1986); *Travelers Indem. Co. v. Lake*, 594 A2d 38 (Del.

the dispute, based upon several sets of factors. 16 AmJur2d Conflict of Laws § 128. The appellants Dowis urge that Georgia join this group of states and adopt the "most significant relationship" test of the Restatement (Second) of Conflict of Laws, and thus, allow them under Missouri law to proceed with their Georgia lawsuit against Mud Slingers and Graves. But it is well-settled that Georgia will continue to adhere to a traditional conflict of laws rule until a better approach is found. *Convergys Corp. v. Keener*, 276 Ga. 808, 812 (582 SE2d 84) (2003); *Gen. Tel. Co. of the Southeast v. Trimm*, 252 Ga. 95, 96 (311 SE2d 460) (1984). So the initial question becomes whether the approach of the Restatement (Second) of Conflict of Laws is superior to the traditional rule utilized in Georgia.

The doctrine of lex loci delicti has served the resolution of conflict of laws issues in tort actions in this State for nearly 100 years. See *Southern R. Co. v. Decker*, 5 Ga. App. 21 (62 SE 678) (1908). It is desirable to have stability and certainty in the law; therefore, stare decisis is a valid and compelling argument for maintaining the doctrine. *Hall v. Hopper*, 234 Ga. 625 (216 SE2d 839) (1975); see also *In re J. M.*, 276 Ga. 88, 91 (575 SE2d 441) (2003) (Carley, J., concurring). Moreover, as appellants acknowledge, lex loci delicti has the virtues of consistency, predictability, and relative ease of application. See *Fitts v. Minnesota Mining & Mfg. Co.*, 581 S2d 819 (Ala. 1991); *Mills v. Quality Supplier Trucking*, 510 SE2d 280 (W.Va. 1998); *Paul v. Nat. Life*, 352 SE2d 550 (W.Va. 1986).

Appellants and other opponents of the rule criticize its perceived rigidness and argue that its strict application is insufficient to address the complexities of modern litigation and can lead to unjust results, in that the results may be "unrelated to the contemporary interests of the states involved or the realistic expectations of the parties." *First Nat. Bank in Fort Collins v. Rostek*, 514 P2d 314, 317 (Colo. 1973). But such criticism ignores several salient facts. As appellees point out, some courts in other jurisdictions have been motivated to depart from the traditional rule in order to redress perceived unjust results by applying their own law. See, e.g., *Mellk v. Sarahson*, 229 A2d 625 (N.J. 1967); *Chambers v. Dakotah Charter*, 488 NW2d 63 (S.D. 1992). In fact, the first departure by a sister state

1991); *Bishop v. Florida Specialty Paint Co.*, 389 S2d 999 (Fla. 1980); *Johnson v. Pischke*, 700 P2d 19 (Idaho 1985); *Fuerste v. Bemis*, 156 NW2d 831 (Iowa 1968); *Adams v. Buffalo Forge Co.*, 443 A2d 932 (Me. 1982); *Mitchell v. Craft*, 211 S2d 509 (Miss. 1968); *Kennedy v. Dixon*, 439 SW2d 173 (Mo. 1969); *Harper v. Silva*, 399 NW2d 826 (Neb. 1987); *Morgan v. Biro Mfg. Co.*, 474 NE2d 286 (Ohio 1984); *Brickner v. Gooden*, 525 P2d 632 (Okla. 1974); *Myers v. Cessna Aircraft Corp.*, 553 P2d 355 (Or. 1976); *Chambers v. Dakotah Charter*, 488 NW2d 63 (S.D. 1992); *Hataway v. McKinley*, supra; *Gutierrez v. Collins*, 583 SW2d 312 (Tex. 1979); *Amiot v. Ames*, 693 A2d 675 (Vt. 1997); *Baffin Land Corp. v. Monticello Motor Inn*, 425 P2d 623 (Wash. 1967). See 16 AmJur2d Conflict of Laws § 124, n. 16.

from the use of lex loci delicti accomplished the application of the law of that state. See *Babcock v. Jackson*, 191 NE2d 279 (N.Y. Ct. App. 1963). By contrast, appellants are asking this Court to abrogate its long-used conflict of laws rule in order to bypass Georgia law. Furthermore, the criticism glosses over the fact that the courts of this State have the power to ameliorate the sometimes seeming harshness of the rule when public policy considerations dictate that they do so. See *Alexander v. Gen. Motors Corp.*, 267 Ga. 339 (478 SE2d 123) (1996); *Karimi v. Crowley*, 172 Ga. App. 761 (324 SE2d 583) (1984).

Appellants also go so far as to assert that the rule of lex loci delicti is premised upon "absolute fortuity," in that the place of the incident giving rise to the litigation is an entirely fortuitous factor. But this ignores the reality that the place of an allegedly tortious act is not irrelevant to the conflict issue, in that a state has an interest in wrongs committed within its boundaries. The crux of the matter in regard to criticism of the traditional rule is the common underlying misconception that the resolution of a conflict of laws in complex litigation requires an equally complicated mechanism to do so.

The approach taken by the Restatement (Second) of Conflict of Laws (1971) certainly fits a description of complexity. It is expansive; it provides a multi-step procedure for making the determination of which state's law should prevail. Section 145 provides the general principle for determining the relevant contacts:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect to that issue, has the most significant relationship to the occurrence and the parties under the principles stated in § 6.
> (2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:
> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties, and
> (d) the place where the relationship, if any, between the parties is centered.
> These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Section 6 sets forth the choice-of-law principles:

> (1) A court, subject to constitutional restrictions, will

follow a statutory directive of its own state on choice of law.

(2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include

(a) the needs of the interstate and international systems,

(b) the relevant policies of the forum,

(c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,

(d) the protection of justified expectations,

(e) the basic policies underlying the particular field of law,

(f) certainty, predictability and uniformity of result, and

(g) ease in the determination and application of the law to be applied.

Finally, Section 146 specifically addresses personal injury actions:

> In an action for a personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

This layered analysis has been described as "eclectic" because it represents a combination of several choice-of-law methodologies. James P. George, False Conflicts and Faulty Analyses: Judicial Misuse of Governmental Interests in the Second Restatement of Conflict of Laws, 23 Rev. of Litig. 489, 519 (Summer 2004). It has been said to function like a code — that is, for any given problem, several Second Restatement sections are likely to apply. Id. This is in contrast to Restatements in other areas of law which tend to pronounce fairly discrete rules. Id. The approach of the Restatement (Second) of Conflict of Laws has been described as working through three related functions, "in the reverse order of their best use." Id. As is evident, Section 6, which is the consideration most identified with the most-significant-relationship test, has two components. Id.

> Section 6(1) gives dispositive priority to the forum's statutory choice-of-law rules. If none apply, section 6(2) lists seven nonexclusive policies that may identify the state having the most significant relationship to the dispute: . . .

> The second functional component is a set of three general principles for torts, contracts, and property. The general principles for torts and contracts list contacts "to be taken into account in applying the principles of § 6." . . . The Second Restatement's third functional component is a number of sections focused on specific claims and issues. [Section 146.] For most choice-of-law questions, more than one section will apply.

Id. at 519-520.

The approach of the Restatement (Second) has been praised by some courts and commentators for its flexibility and its reflection of more "modern" thinking on choice of law. *Hataway v. McKinley*, supra at 57, citing Gregory E. Smith, Choice of Law in the United States, 31 Hastings L.J. 1041, 1046 (1987). But it has its share of critics in the courts and in the commentary of scholars.

The very flexibility of the approach of the Restatement (Second) has proved to be problematic. There are those who have criticized it as a tool for courts to simply engage in "contact counting" without consideration of what is espoused in the Restatement (Second), that is, the interests and policies of the states in question. *Hataway v. McKinley*, supra at 58, citing Gregory E. Smith, Choice of Law in the United States, 31 Hastings L.J. at 1046. It has been said to have "indeterminate language and lack of concrete guidelines." *Paul v. Nat. Life*, supra at 553. Others find it:

> has the irony of dominating the field while bewildering its users. The result is a set of choice-of-law decisions so lacking in uniformity that the Second Restatement's balancing test has become chimeric, taking on vastly different forms in different courts. Erratic applications may be partly due to its code-like function, which can require the application of two or more black letter sections, each with multiple analytical steps. . . . Second Restatement adoptions necessarily assume different forms in different states, even without aberrational applications.

James P. George, False Conflicts and Faulty Analyses: Judicial Misuse of Governmental Interests in the Second Restatement of Conflict of Laws, 23 Rev. of Litig. 489, 491-492 (Summer 2004).

The adoption of the Restatement (Second) approach has not brought certainty or uniformity to the law. *Fitts v. Minnesota Min. & Mfg. Co.*, supra at 823. Quite the contrary. As the Supreme Court of Alabama noted,

Some state courts routinely list [the Restatement's] relevant sections in their opinions and try to follow them; this task is easiest when the case is controlled by one of the Restatement Second's specific narrow rules. Other state courts have not been consistent in their terminology about what approach they are following, and others have retained primary emphasis on the place of the wrong in tort cases, even while abandoning the lex loci delicti for the Restatement Second....

Id. at 823, quoting Kay, Theory Into Practice: Choice of Law in the Courts, 34 Mercer L. Rev. 521, 561-562 (1983). A review of cases shows that while the rule of lex loci delicti of the original Restatement is attacked because of its seeming rigidity and its insistence on the application of a few specific rules, the approach of the Restatement (Second) fails to provide enough guidance to the courts to produce even a semblance of uniformity among the states following its method. Id.

The methodology is not only complex, but it provides no underlying principle other than applying the law of the state that has the "most significant relationship" to the issue. . . . As a result, it has become difficult to predict what a court will do when faced with choice of law issues, and each case seems to demand an ad hoc determination. For attorneys, this lack of predictability may discourage settlement; it certainly inhibits an accurate case valuation. For judges, choice of law issues take an inordinate amount of time and require a fairly complex analysis.

Shirley A. Wiegand, Fifty Conflict of Laws "Restatements": Merging Judicial Discretion and Legislative Endorsement, 65 La. L. Rev. 1, 4 (2004).

The inescapable conclusion is that the approach of the Restatement (Second) of Conflict of Laws is not superior to the traditional rule of lex loci delicti currently used in Georgia. Nor have the other major approaches mentioned earlier proven to be a panacea for the resolution of conflict of laws issues.[7] In fact, the array of "modern"

---

[7] Currie's "governmental interest" approach fails to adequately deal with true conflicts and is easily manipulated by identifying alternative governmental interests of a forum law, thereby leading to forum favoritism. *Hataway v. McKinley*, supra at 58; Gregory E. Smith, Choice of Law in the United States, 31 Hastings L.J. 1041, 1048 (1987).

Leflar's "choice-influencing considerations" almost always leads the forum to select its own law; it has been described as "plagued by excessive forum favoritism." *Hataway v. McKinley*, supra at 58; Gregory E. Smith, Choice of Law in the United States, 31 Hastings L.J. at 1049.

conflict approaches and their seemingly unending variations have been described as creating "a veritable playpen for judicial policy-makers."[8] Shirley A. Wiegand, Fifty Conflict of Laws "Restatements": Merging Judicial Discretion and Legislative Endorsement, 65 La. L. Rev. 1, 4 (2004). This Court declines to engage in such a policymaking exercise.[9]

Utilizing a rule in the area of conflict of laws can serve the ends of justice because it furnishes the judicial machinery by which like situations are adjudged equally. *First Nat. Bank in Fort Collins v. Rostek*, supra at 319, citing Reese, Choice of Law: Rules or Approach, 57 Cornell L. Rev. 315 (1972). Such a rule of law can fulfill an essential function of concrete justice. Id. at 319. This Court will retain its long-held conflict of laws rule not out of blind adherence but rather, out of the candid recognition that the subsequently-developed theories have significant problems. The relative certainty, predictability, and ease of the application of lex loci delicti, even though sometimes leading to results which may appear harsh,[10] are preferable to the inconsistency and capriciousness that the replacement choice-of-law approaches have wrought. *Paul v. Nat. Life,* supra at 555; *First Nat. Bank v. Rostek*, supra. As the Court of Appeals of New York aptly noted, "we should not depart from sound precedent simply for the sake of change or merely because other courts have arrived at a result different from that which we have espoused." *Endresz v. Friedberg*, 248 NE2d 901, 906 (N.Y. 1969).

The rule of lex loci delicti remains the law of Georgia, and the judgment of the Court of Appeals is affirmed.[11]

*Judgment affirmed. All the Justices concur.*

---

The concept of lex fori, by definition, requires that the law of the forum governs the rights and liabilities of the parties. *Hataway v. McKinley*, supra at 58-59.

[8] The current situation in the area of conflict theories has also been unfavorably described as "a total disaster," "chaos," "gibberish," and "a conflicts mine field in a maze constructed by professors drunk on theories." Shirley A. Wiegand, Fifty Conflict of Laws "Restatements": Merging Judicial Discretion and Legislative Endorsement, 65 La. L. Rev. 1, 4 (2004), quoting Michael H. Gottesman, Adrift on the Sea of Indeterminacy, 75 Ind. L.J. 527 (2000); Alfred Hill, For a Third Conflicts Restatement-But Stop Trying to Reinvent the Wheel, 75 Ind. L.J. 535, 538 (2000); Friedrich K. Juenger, A Third Conflicts Restatement, 75 Ind. L.J. 403 (2000); *Paul v. Nat. Life*, supra at 551; Friedrich K. Juenger, Choice of Law and Multistate Justice 235 (1993).

[9] In the context of examining the traditional conflict of laws rule lex loci contractus, it has been suggested that any adoption of the approach of the Restatement (Second) of Conflict of Laws is a matter properly for the General Assembly. *Convergys Corp. v. Keener*, supra at 813 (Sears, P. J., concurring).

[10] It should be noted that in this case, the claimed harshness of result is belied by appellants' own assertion that they could have brought their tort action in Missouri or Tennessee.

[11] In this appeal from the grant of certiorari, this Court does not revisit the determinations by the Court of Appeals regarding any public policy exception to the rule of lex loci delicti in this case.

DECIDED OCTOBER 24, 2005.

*Ronald P. Jayson*, for appellants.
*Bovis, Kyle & Burch, Gregory T. Presmanes, Amy R. Perkins*, for appellees.