IN THE COURT OF APPEALS OF TENNESSEE
AT KNOXVILLE
November 14, 2005 Session

## SHARON LEMONS, ET AL. v. RHONDA CLOER, ET AL.

**Interlocutory Appeal from the Circuit Court for Polk County**
**Nos. CV-01-046[1], CV-03-106, CV-03-107, CV-03-108    John B. Hagler, Judge**

_____

**No. E2004-02842-COA-R9-CV - FILED APRIL 28, 2006**

_____

**Tenn. R. App. P. 9 Interlocutory Appeal; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

AND

## JIMMY DARRELL SILVERS, ET AL. v. RHONDA CLOER, ET AL.

**Appeal from the Circuit Court for Polk County**
**Nos. CV-03-109, CV-03-110    John B. Hagler, Judge**

_____

**No. E2004-02745-COA-R3-CV[2]**

_____

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Circuit Court**
**Affirmed; Case Remanded**

These appeals find their genesis in a collision between a Georgia school bus and a CSX freight train in Polk County, Tennessee, just north of the Georgia state line. As a result of the collision, three

_____

[1]All of the cases before us on this appeal – being six in number – were consolidated for disposition by the trial court under its number CV-01-046, the number assigned to the Lemons case.

[2]This Tenn. R. App. P. 3 appeal as of right was consolidated by us with the Lemons case because of common facts and a common question of law.

children were killed and four others on the bus were injured. All of the children were minors. Three wrongful death actions and three personal injury actions – as well as other actions not involved in this appeal – were filed in the trial court. The cases before us named as defendants, Rhonda Cloer, the driver of the bus; the Murray County [Georgia] School District ("the School District"); and other entities. Regarding two of the wrongful death claims against the School District, the trial court held that the claims were barred by the personal injury one-year statute of limitations. As to all of the claims arising out of the collision, the trial court held that the School District's liability could not exceed $300,000, the total amount of the coverage for one incident under the School District's vehicle liability policy. We affirm.

CHARLES D. SUSANO, JR., J., delivered the opinion of the court, in which HERSCHEL P. FRANKS, P.J., and NORMA MCGEE OGLE, SP. J., joined.

Phillip A. Fleissner and Scott N. Davis, Chattanooga, Tennessee; Warren N. Coppedge, Jr., Dalton, Georgia; and William W. Keith, III, Chatsworth, Georgia, for the appellants, Sharon Lemons and Ralph C. Pritchett.

Jerry H. Summers, Chattanooga, Tennessee, and Jack B. McNamee, Birmingham, Alabama, for the appellants, Jimmy Darrell Silvers and Sonya Rimer; Cynthia J. Sluder; Mary Martin; Anita K. Beavers; Jack D. Sherrill; and Sheila G. Sherrill.

Phillip L. Hartley and Martha M. Pearson, Gainesville, Georgia; F. Gregory Melton, Dalton, Georgia; and Randy Sellers, Cleveland, Tennessee, for the appellee, Murray County School District.

**OPINION**

I.

This school bus/freight train collision occurred at approximately 6:35 a.m. on March 28, 2000, at a railroad crossing on Liberty Church Road in Polk County. The school bus was driven by Rhonda Cloer, an employee of the School District. Seven Georgia school children were on the bus.

As shown on the map attached as an appendix to this opinion, Liberty Church Road is essentially a "loop" road located to the east of U.S. Highway 411. The south end of the road begins at Highway 411 in Georgia while, in the north, the road ends at the same Highway 411, but this time in Tennessee. At the south end of the road, it proceeds east from Highway 411 and then due north, all in Georgia. The northward direction of the road ends at the Georgia - Tennessee state line. From that point, the road proceeds due west for a relatively short distance. This westward movement of the road straddles the state line. Finally, the road leaves the state line, goes slightly northwest and then due west to Highway 411. As can be seen, once the road leaves the state line, it is in Tennessee for the remainder of the distance back to Highway 411.

On the morning of March 28, 2000, the defendant Cloer was operating a school bus for the School District. Her designated route required her to traverse Liberty Church Road from its southern exit off Highway 411 along the above described loop, back to Highway 411, and then along 411 south back to a school in Georgia. On the day in question, Ms. Cloer's bus stopped, as it was traveling west and tracing the state line, to pick up several Georgia children at Liberty Baptist Church, a bus stop located on the south side of Liberty Church Road, *i.e.*, the Georgia side. The right-hand or north side of the road is in Tennessee. After picking up the children, the school bus continued to proceed west and into Tennessee. Before Ms. Cloer's route took her back to 411, her bus would have to cross a set of railroad tracks – the impact site of the collision at issue. This intersection was marked by a railroad crossing sign, which was placed there by the Tennessee Department of Transportation. The railroad crossing did not have warning bells, lights, or crossing arms.

While Ms. Cloer was approaching the tracks, the train was heading toward Liberty Church Road at a speed of 51 miles per hour. On the train were two Tennessee residents – an engineer, Roger Farley, and a conductor, Kendrick Perry.[3] The train's lights were on, and, as was the custom, Mr. Farley sounded a horn cadence upon approaching the crossing. The school bus approached the crossing at approximately 15 miles per hour. As the train got closer to the intersection, Mr. Farley saw the school bus and watched for signs indicating that the bus was going to stop before it reached the railroad crossing. A video camera, which was on the school bus for the purpose of monitoring the behavior of the children, captured the fact that the bus did not stop prior to crossing the railroad tracks. Country music is audible on the tape.

When Mr. Farley realized that the bus was not going to stop, he applied the train's emergency braking system and continuously blew the train's horn. The train hit the bus near its rear axle and pushed the body of the bus, which was now separated from the chassis, some 200 feet. The train came to a stop approximately 1,990 feet beyond the crossing. Tennessee emergency vehicles responded to the collision; the injured children were transported to Tennessee hospitals. Three of the seven children on the bus – Amber Pritchett, Kayla Silvers, and Daniel Pack – died as a result of their injuries. The other children on board, including Ms. Cloer's daughter,[4] suffered minor to severe injuries.

II.

On March 27, 2001, within one year of the accident on March 28, 2000, Sharon Lemons and Ralph C. Pritchett filed a complaint in the trial court seeking damages for the wrongful death of their

---

[3] Both Mr. Farley and Mr. Perry filed personal injury actions in the trial court, but neither of these claims are before us on this appeal.

[4] A lawsuit also was filed in connection with the injuries sustained by Ms. Cloer's daughter. It is not before us on this appeal.

daughter, Amber Pritchett. The complaint seeks to recover damages against the School District and others.[5]

On June 25, 2003, more than three years after the accident, Cynthia J. Sluder and Jimmy D. Silvers,[6] filed separate actions for the wrongful deaths of their respective children, Daniel Pack and Kayla Silvers. On the same day, adult relatives filed three separate suits seeking damages for injuries sustained by Jordan J. Manis, Brittany A. Gaddis, and Kevin Sherrill, all of whom were passengers on the school bus and all of whom suffered injuries, in varying degrees of seriousness, as a result of the accident. As pertinent to the issues on this appeal, each of these five suits seeks damages against the School District.

The trial court, acting on the motion for partial summary judgment filed by the School District, ruled that, pursuant to Georgia law, which the court found to be applicable to these cases under principles of conflict of laws and comity, the School District's liability for all claims arising out of this accident was capped at $300,000, the total coverage afforded by its vehicle liability insurance policy for a single accident. With respect to the Sluder wrongful death claim and the Silvers/Rimer[7] wrongful death claim, the trial court granted the School District's motion for summary judgment, holding that these claims were barred by the one-year statute of limitations for personal injury, Tenn Code Ann. § 28-3-104 (2000).[8]

We granted a discretionary appeal to Sharon Lemons and Ralph C. Pritchett as well as to Mary Martin, Anita K. Beavers, Jack D. Sherrill, and Sheila G. Sherrill. The Silvers and Sluder claims are before us as of right.

The material facts with respect to the issues raised on this appeal are not in dispute. Accordingly, our review is *de novo* on the record of the proceedings before the trial court with no presumption of correctness as to the trial court's conclusions of law. *See* Tenn. R. App. P. 13(d). *See also* **Southern Constructors, Inc. v. Loudon County Bd. of Educ.**, 58 S.W.3d 706, 710 (Tenn. 2001).

---

[5]Also named as defendants were the driver of the bus; CSX Transportation, Inc.; the company responsible for trimming the vegetation along the railroad tracks; and State Farm Mutual Automobile Insurance Company. These claims are not before us on this appeal.

[6]Kayla Silvers' mother, Sonya Rimer, apparently was later added as a plaintiff.

[7]For ease of reference, this case will hereinafter be referred to as the Silvers' claim. No disrespect toward the child's mother is intended.

[8]The court also ruled that the claims filed on behalf of Manis, Gaddis, and Sherrill, all minors, were not barred by Tenn. Code Ann. § 28-3-104. The School District does not appeal this ruling.

III.

These consolidated appeals focus on two separate and distinct issues. The first issue, which pertains to all of the still-pending claims arising out of this accident, is whether Georgia's sovereign immunity – as it relates to the School District's $300,000 vehicle liability insurance policy – applies to the facts of this case. The plaintiffs contend that the $300,000 limit does not apply for several reasons. They argue that both Georgia and Tennessee choice of law principles dictate that Tennessee – not Georgia – substantive law should be applied. They argue that "extraterritorial governmental immunity" does not exist because, according to the plaintiffs, once the school bus crossed into Tennessee, the School District lost its entitlement to sovereign immunity. The plaintiffs further take issue with the trial court's finding that the principle of comity requires the application of Georgia law. Additionally, they appear to argue that the School District cannot invoke sovereign immunity with respect to certain alleged acts of negligence because of the nature of those alleged acts.

The second issue before us pertains only to the wrongful death claims arising out of the deaths of Kayla Silvers and Daniel Pack. The plaintiffs pursuing these claims contend that the trial court erred in determining that their claims are barred by the one-year statute of limitations for personal injury. They assert that Tenn. Code Ann. § 28-1-106 (2000) tolled the running of the statute of limitations during what would have been their period of minority, had they not been killed in the accident.

IV.

A.

In evaluating the first issue, we must determine if there is, in fact, a conflict of laws. *Hataway v. McKinley*, 830 S.W.2d 53, 55 (Tenn. 1992). Clearly, there is. Under the operative Georgia law, the School District's liability arising out of claims for negligent use of a motor vehicle is limited to the amount of the School District's motor vehicle liability coverage under the policy in effect at the time of the accident. Ga. Code Ann. § 33-24-51(b), (c), (d) (stating that Georgia's sovereign immunity is waived "only to the extent of the limits or the coverage of the insurance policy."). This means that the School District's liability is capped at $300,000, the total amount of coverage afforded for one accident under the School District's vehicle liability insurance policy. Therefore, if Georgia substantive law applies, the School District is immune from any liability in excess of $300,000. On the other hand, if the substantive law of Tennessee applies, there is no limit.[9]

---

[9] Tennessee has a similar Code provision, Tenn. Code Ann. § 29-20-311 (2000), capping damages against a governmental entity. However, if Tennessee law applies, the damages would not be capped in this case because the limit in Tenn. Code Ann. § 29-20-311 applies to *Tennessee* governmental entities. *See* Tenn. Code Ann. § 29-20-102 (Supp. 2005) (defining a "[g]overnmental entity" as "any political subdivision of the state of *Tennessee*"). (Emphasis added).

The School District does not dispute that the procedural law of Tennessee applies to the facts of this case. However, it does not necessarily follow from this that the substantive law of Tennessee is also applicable to this accident in Tennessee. The fact that one state's law may apply on procedural matters while another state's law may be applicable to substantive law issues is a situation that is recognized in comment (d) to Restatement (Second) of Conflict of Laws § 145 (1971):

> The courts have long recognized that they are not bound to decide all issues under the local law of a single state. Thus, in a simple motor accident case that occurred outside the state of the forum, a court under traditional and prevailing practice applies its own state's rules to issues involving process, pleadings, joinder of parties, and the administration of the trial . . . while deciding other issues – such as whether the defendant's operation of the vehicle was negligent – by reference to the law selected by application of the rules stated in this Chapter.

*Id.* Thus, the issue before us remains: Does the substantive law of the forum state – here, Tennessee – apply or does the substantive law of Georgia determine the rights of these parties? We hold that a complete answer to this question is found in *Hataway v. McKinley*, a case in which the Tennessee Supreme Court adopted the Restatement (Second)'s approach in resolving choice of law conflicts. 830 S.W.2d at 59. Prior to *Hataway*, Tennessee followed the *lex loci delicti* doctrine. Under *lex loci delicti*, the substantive rights of an injured party are determined according to the law of the state where the injury occurred. *Id.* at 55. *Hataway* involved a tragic scuba-diving death in Arkansas. *Id.* at 54. The dive was part of a scuba class taught by the defendant at Memphis State University. *Id.* Both the defendant and the deceased were life-long residents of Tennessee. *Id.* The parents of the deceased filed a wrongful death action in Memphis. *Id.* If the *lex loci delicti* rule was the law of the case, it is clear that the substantive law of Arkansas, *e.g.,* that state's wrongful death statute and comparative fault system, would be applicable to the facts in that case. *Id.* at 55.

The Tennessee Supreme Court in *Hataway* declined to apply *lex loci delicti*, opting instead to adopt the "most significant relationship" test embodied in the Restatement:

> (1) The rights and liabilities of the parties with respect to an issue in tort are determined by the local law of the state which, with respect

to that issue, has the *most significant relationship* to the occurrence and the parties under the principles stated in § 6.[10]
(2) Contacts to be taken into account in applying the principles of § 6 to determine the law applicable to an issue include:

> (a) the place where the injury occurred,
> (b) the place where the conduct causing the injury occurred,
> (c) the domicile, residence, nationality, place of incorporation and place of business of the parties,
> (d) the place where the relationship, if any, between the parties is centered.

These contacts are to be evaluated according to their relative importance with respect to the particular issue.

Restatement (Second) of Conflict of Laws § 145 (emphasis added). Section 146 of the Restatement (Second) of Conflict of Laws provides that

> [i] an action for personal injury, the local law of the state where the injury occurred determines the rights and liabilities of the parties, unless, with respect to the particular issue, some other state has a more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

Restatement (Second) of Conflicts of Laws § 175 is also pertinent:

> In an action for wrongful death, the local law of the state where the injury occurred determines the rights and liabilities of the parties unless, with respect to the particular issue, some other state has a

---

[10] Section 6 recites the following choice-of-law principles:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
> > (a) the needs of the interstate and international systems,
> > (b) the relevant policies of the forum,
> > (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
> > (d) the protection of justified expectations,
> > (e) the basic policies underlying the particular field of law,
> > (f) certainty, predictability, and uniformity of result, and
> > (g) ease in the determination and application of the law to be applied.

more significant relationship under the principles stated in § 6 to the occurrence and the parties, in which event the local law of the other state will be applied.

The Tennessee Supreme Court, after abandoning the "outmoded" *lex loci delicti* approach, determined that Tennessee substantive law would apply to the facts before it because, in the words of the court, Tennessee had the "more significant relationship to the occurrence and the parties." *Hataway*, 830 S.W.2d at 54. *Hataway* further provides:

> The only contact the parties had with the State of Arkansas was that the injury occurred in that state. Both the decedent and the defendant were life-long residents of Tennessee and neither owned any property in Arkansas. The parties' relationship was centered in Tennessee because the relationship was formed and continued as a result of the decedent's participation in the scuba class taught at Memphis State by the defendant. We think the fact that the injury occurred in Arkansas was merely a fortuitous circumstance, and that the State of Arkansas has no interest in applying its laws to this dispute between Tennessee residents. Under the facts here presented, we conclude that although the injury occurred in Arkansas, the State of Tennessee has a more significant relationship to the occurrence and the parties under the factors and contacts set out in §§ 6 and 145 of *Restatement (Second)*.

*Id.* at 60.

In the instant case, all of the children on the bus were residents of Georgia. The bus driver was also a resident of Georgia. The School District is a Georgia governmental entity. The School District's relationships with the plaintiffs were clearly centered in Georgia. This was a Georgia bus picking up children living in Georgia and transporting them to a Georgia school. The contacts with Tennessee are the following: the accident occurred in Tennessee; Tennessee emergency and medical personnel responded to the accident; injured parties were taken to Tennessee hospitals; and the train engineer and conductor, who also filed personal injury claims in the trial court, were residents of Tennessee. When all of this is considered, we conclude that Georgia had a "more significant relationship" to the parties and events at issue. *See* Restatement (Second) of Conflict of Laws § 145(2). This is not to say that Tennessee did not have a relationship to the parties and this school bus/freight train collision; but, in our judgment, Tennessee's relationship is less significant than that of Georgia.

As a somewhat alternative argument for the application of Tennessee law over Georgia law, the plaintiffs appear to rely on the fact that Georgia still applies the *lex loci delicti* rule in its resolution of choice of law conflicts. *Dowis v. Mud Slingers, Inc.*, 621 S.E.2d 413 (Ga. 2005). The plaintiffs mentioned the recent decision in *Dowis* at oral argument. Consequently, we requested that

the parties file supplemental briefs addressing its impact, if any, on the issues presently before us. The sole issue in **Dowis** was whether the *lex loci delicti* rule should be retained as Georgia's choice of law rule. 621 S.E.2d at 414. The Georgia High Court looked at the "most significant relationship" test, and specifically Tennessee's **Hataway** opinion, for an alternative approach. *Id.* at 415-18. Citing *stare decisis* and the predictability of the *lex loci delicti* rule, the Georgia Supreme Court held that it would continue to utilize the *lex loci delicti* rule. *Id.* at 419.

The plaintiffs in the instant case argue that the decision in **Dowis** somehow establishes (1) that Tennessee law should apply because Tennessee, as the place where the collision occurred, had substantial interests in the wrongs committed within its borders; and (2) that, because of this difference in approach, Tennessee should not recognize Georgia governmental immunity by way of comity. We find these arguments to be without merit and totally unsupported by the decision in **Dowis**. The conflict of laws rule to which Georgia prescribes is not material in this case. This action was brought in a Tennessee state court; thus, Tennessee's choice of law rule, *i.e.,* the **Hataway** test, is the controlling relevant choice of law principle.

The plaintiffs contend that, if we determine Georgia substantive law applies, all of that law, including *lex loci delicti*, is applicable. The plaintiffs extrapolate from this proposition that Tennessee's substantive law, including a lack of immunity for this non-Tennessee entity, applies because Tennessee is where the accident occurred; therefore, Tennessee law is the *lex loci delicti*. This circular reasoning is commonly known as *renvoi,* a French word meaning "sending back."[11] To our knowledge, the only court in Tennessee to consider the application of *renvoi* is a federal district court. In the case of **Hari & Assocs. v. RNBC, Inc.**, 946 F.Supp. 531 (M.D. Tenn. 1996), the plaintiff, a motel developer, sued his lender for fraud in a federal district court located in Tennessee. *Id.* at 533-34. Applying **Hataway**, the district court found that, although the motel was to be built in Tennessee, Georgia had the "most significant relationship" to the tort because all of the parties' contracts and loan agreements were centered and executed in Georgia. *Id.* at 536. The plaintiff similarly relied on the *renvoi* doctrine in an attempt to convince the court that Tennessee, not Georgia, substantive law should apply. *Id.* at 536-37. The district court rejected the plaintiff's *renvoi* argument and "decline[d] to adopt this disfavored doctrine for the state of Tennessee." *Id.* at 537.

We agree with the district court's approach to the *renvoi* argument. Since the complaints in the instant case were filed in a Tennessee court, Tennessee's choice of law rule, the "most significant relationship" test, applies. As previously stated, this test, in our judgment, leads, without any doubt, to Georgia substantive law. At this juncture, the plaintiffs would argue that the Georgia substantive

---

[11]Black's Law Dictionary 1300 (7th ed. 1999). The *renvoi* doctrine has been defined thusly:

> The doctrine under which a court in resorting to foreign law adopts as well the foreign law's conflict-of-laws principles, which may in turn refer the court back to the law of the forum.

*Id*.

law, to which ***Hataway*** directs us, includes the Georgia choice of law, *i.e.*, *lex loci delicti*. This means, according to the plaintiffs, that we are "sen[t] back" to Tennessee as our source of substantive law. The problem with this approach is that if Georgia substantive law, in the context under discussion, is viewed as including its choice of law principles, there is no reason to hold that the Tennessee substantive law does not also include its choice of law principles. The Georgia choice of law doctrine of *lex loci delicti* would bring us back to Tennessee, whose substantive law, including its choice of law doctrine of "most significant relationship," would lead back to Georgia, after which the process, arguably, would be repeated *ad infinitum*. Obviously, this "quagmire" cannot be the law.

The plaintiffs also contend that the School District does not enjoy what the plaintiffs refer to as "extraterritorial governmental immunity." They argue that once the school bus left Georgia, the School District lost its protection as a governmental entity, *i.e.*, limited immunity under Georgia law, and became nothing more than a private, non-immune, enterprise. In support of their position, the plaintiffs rely upon the cases of ***State of Georgia v. City of Chattanooga***, 264 U.S. 472, 44 S.Ct. 369, 68 L.Ed. 769 (1924) and ***Harris v. City of Chattanooga***, 507 F.Supp. 374 (N.D. Ga. 1981). Neither of these cases are germane to the facts of our case for the simple reason that neither involves the application of the "most significant relationship" test adopted in ***Hataway***. Under ***Hataway***, the substantive law of Georgia, where relevant, applies to the facts of the instant case. There is nothing in ***Hataway*** to suggest that a court in Tennessee can "cherry pick" the substantive law of the state found to have the "most significant relationship" to the occurrence and the parties. In other words, once a Tennessee court determines that a foreign court has the "most significant relationship," that state's substantive law applies as fully as if the occurrence had taken place in the foreign state. That law, in this case, includes the School District's limited immunity.

B.

The trial court held that, in addition to the rationale of ***Hataway***, the doctrine of comity would require the application of Georgia substantive law to this case. "Comity" means that courts of one state may, out of respect and the need for interstate harmony, defer to the decisions of the courts of another state or extend immunity to another state out of deference to the foreign state's laws, even when not required to do so by the Full Faith and Credit Clause of the United States Constitution. *See **Nevada v. Hall***, 440 U.S. 410, 426, 99 S.Ct. 1182, 1191, 59 L.Ed.2d 416 (1979) ("It may be wise policy, as a matter of harmonious interstate relations, for States to accord each other immunity or to respect any established limits on liability."). "[W]here the law of another jurisdiction is applicable, Tennessee will enforce the substantive rights which litigants have under the laws of the other jurisdiction if such rights are not contrary to the policy of Tennessee." ***Hyde v. Hyde***, 562 S.W.2d 194, 196 (Tenn. 1978). The public policy of a state is found in its constitution, statutes, and court decisions. ***Id.*** In the instant case, it is clear that Georgia's law with respect to waiver of immunity is completely in harmony with the public policy of Tennessee. *See* Tenn. Code Ann. § 29-20-311 (stating that awards against Tennessee governmental entities cannot exceed the amount of insurance coverage); Tenn. Code Ann. § 29-20-403(B)(2)(A) (Supp. 2005) (setting the applicable

limits for motor vehicle coverage at $130,000 for one person and $350,000 for all persons in a single occurrence).

## C.

The plaintiffs spend a great deal of time toward the end of their brief discussing whether or not certain alleged negligent acts of the School District were ministerial, discretionary, planning, or operational in nature. They contend that the School District cannot invoke immunity for the negligent acts of Ms. Cloer while in Tennessee (*e.g.,* not stopping the school bus or not listening for the train), or for any negligence associated with the School District's supervision or hiring of the person who planned, routed, and scheduled the school bus. We believe a discussion of these issues is inappropriate at this juncture. The only issue before us is whether the School District's liability is capped at $300,000. We have found that it is. The plaintiffs' arguments under discussion do not pertain to this; rather, they pertain to the issue of whether, and under what circumstances, the School District can be liable for its employees' negligence. This is a different issue and one that is not before us on this appeal.

## D.

In summary, we conclude that Georgia substantive law applies to the facts of this case. Thus, the School District's liability arising out of this accident is capped by the single-accident limit of $300,000 under its vehicle liability insurance policy. *See* Ga. Code Ann. § 33-24-51(c).

## V.

The last issue we must resolve is whether the trial court erred in holding that the wrongful death claims brought on behalf of Daniel Pack and Kayla Silvers are barred by the one-year personal injury statute of limitations. The relevant facts are these. The collision occurred on March 28, 2000. The wrongful death claims of two of the three children killed in the collision, Pack and Silvers, were filed by their respective parents, Cynthia Sluder and Jimmy Silvers, in June, 2003, as were the personal injury claims of three of the other children injured in the accident. The School District filed a motion for summary judgment, arguing that *all* of these claims were barred by the applicable one-year statute of limitations. In September, 2004, the trial court granted the School District partial summary judgment pursuant to Tenn. R. Civ. P. 54.02, concluding that the Sluder and Silvers wrongful death claims are barred by the statute of limitations found at Tenn. Code Ann. § 28-3-104, and that the claims were not tolled by Tenn. Code Ann. § 28-1-106. The School District's motion for summary judgment was denied as to the personal injury claims asserted on behalf of these three children injured in the accident.

Sluder and Silvers argue that the trial court erred in granting summary judgment with respect to their actions because, according to them, Tenn. Code Ann. § 28-1-106 allowed them to bring suit up to one year after their child's emancipation would have taken place, had they lived. First, it is important to note that "our courts have uniformly applied the one-year statute of limitation contained

in § 28-3-104 governing actions for personal injuries to actions for wrongful death." *Collier v. Memphis Light, Gas & Water Div.*, 657 S.W.2d 771, 774 (Tenn. Ct. App. 1983) (citing *Jones v. Black*, 539 S.W.2d 123 (Tenn. 1976)). Furthermore, in *Jordan v. Baptist Three Rivers Hosp.*, 984 S.W.2d 593 (Tenn. 1999), the Supreme Court held that, in wrongful death actions, the "pecuniary value of a decedent's life includes the element of damages commonly referred to as loss of consortium." *Id.* at 595. In other words, loss of consortium-type damages "do[] not create a new cause of action but merely refine[] the term 'pecuniary value.'" *Id.* at 601. Thus, the one-year statute of limitations period also applies to the loss of consortium aspect of the wrongful death claim. *See Hancock v. Chattanooga-Hamilton County Hosp. Auth.*, 54 S.W.3d 234, 237 (Tenn. 2001).

Plaintiffs Sluder and Silvers assert that, since their children were minors at the time of their death, Tenn. Code Ann. § 28-1-106 tolls the statute of limitations until one year after the children *would* have reached the age of 18 years. Section 28-1-106 provides as follows:

> If the person entitled to commence an action is, at the time the cause of action accrued, either within the age of eighteen (18) years, or of unsound mind, such person, or such person's representatives and privies, as the case may be, may commence the action, after the removal of such disability, within the time of limitation for the particular cause of action, unless it exceeds three (3) years, and in that case within three (3) years from the removal of such disability.

*Id.*

Because the statute of limitations begins to run, under the statute, as soon as the disability is removed, it is "most important to determine when the disability is removed." *Collier*, 657 S.W.2d at 774. *Collier* is a complete answer on this issue because it specifically holds that, even after considering the potential tolling effect of § 28-1-106, a deceased minor's next of kin is required to file a wrongful death action within one year *from the date of death of the minor*. *Id.* at 773-74. In making this determination, this Court relied upon Justice Brock's dissenting opinion in *Jones v. Black*, in which he said the following:

> The death of a person under disability removes the disability and sets the statute to running; thus, if a person under a disability, such as the deceased mother in this case, had a cause of action for personal injuries, that action must be commenced within one year after his or her death.

*Collier*, 657 S.W.2d at 774 (quoting *Jones v. Black*, 539 S.W.2d at 126 ) (Brock, J., dissenting). Sluder and Silvers brought their wrongful death claims more than three years after the death of their minor children. Because Tennessee's one-year statute of limitations applies to these claims, and because Tenn. Code Ann. § 28-1-106 does not have the effect of tolling the limitations period, the trial court correctly dismissed the Sluder and Silvers claims.

VI.

The judgments of the trial court before us in these consolidated appeals are affirmed. These matters are remanded to the trial court for such further proceedings as may be required, consistent with this opinion. Costs on appeal are taxed to Sharon Lemons, Ralph C. Pritchett, Cynthia J. Sluder, Jimmy Darrell Silvers, Sonya Rimer, Mary Martin, Anita K. Beavers, Jack D. Sherrill, and Sheila G. Sherrill.

_____
CHARLES D. SUSANO, JR., JUDGE