NATIONAL ADVERTISING, INC.,
Plaintiff/Appellant,

v.

McCORMICK ASHLAND CITY AND NASHVILLE RAILROAD, INC., and Cheatham County Rail Authority, Defendants/Appellees,

and

McCORMICK ASHLAND CITY AND NASHVILLE RAILROAD, INC., Plaintiffs/Appellees,

v.

CHEATHAM COUNTY RAIL AUTHORITY, et al., Defendants/Appellants.

Court of Appeals of Tennessee, Middle Section, at Nashville.

May 22, 1996.

Rehearing Denied July 10, 1996.

Permission to Appeal Denied by Supreme Court Nov. 25, 1996.

Jere R. Lee, Nashville, for McCormick Ashland City and Nashville Railroad, Inc.

Frank G. Abernathy, Nashville, for Cheatham County Rail Authority.

W. Edward Ramage, Nashville, for Central of Tennessee Railway and Navigation Co.

## OPINION

CANTRELL, Judge.

After the main issues between these parties had been decided and affirmed on appeal, the Chancery Court of Davidson County awarded the funds being held by the court to the appellee, McCormick Ashland City and Nashville Railroad, Inc. (MACO). The Cheatham County Rail Authority (CCRA) and Central of Tennessee Railway and Navigation Company, Incorporated (Central) appeal. We affirm.

### I.

CCRA, created in 1987 pursuant to Tenn. Code Ann. § 7–56–201, et seq., to provide rail service between Nashville and Ashland City, contracted with MACO to establish freight service between the two cities. In April of 1989, the parties agreed to amend the operating agreement to allow MACO to lease CCRA's property for advertising purposes or for storage of rail cars. In return MACO

agreed to assume the utility, service, and maintenance functions previously borne by CCRA, and to use any surplus income for the maintenance and rehabilitation of the branch line. MACO leased advertising space to certain advertisers and leased part of CCRA's property to another company for rail car storage.

In 1992 CCRA terminated the operating agreement with MACO, and sent notices to the advertisers and the rail company to make future payments to CCRA. MACO protested, and ultimately one of the advertisers filed an interpleader action in the Chancery Court of Davidson County, where MACO and the CCRA were already in litigation over their contract. After that time the rent was paid into court.

When the case in Davidson County came on for trial, MACO voluntarily dismissed its claims against CCRA and the trial proceeded on CCRA's claims against MACO. At the close of CCRA's proof MACO moved for an involuntary dismissal pursuant to Rule 41.02 Tenn.R.Civ.Proc. The chancellor granted the motion. Both sides then moved for disbursement of the funds being held by the court. The chancellor denied the motions and entered the following order:

> This cause came on to be heard on the 10th day of September, 1993 before Chancellor C. Allen High of the Chancery Court of Davidson County, Tennessee, Part II, upon the Motion to Disburse Funds filed by McCormick Ashland City and Nashville Railroad, Inc. ("MACO") and the Court, after due consideration of said Motion, the Memorandum in Support thereof, the Response in Opposition filed by Cheatham County Rail Authority ("CCRA") and the arguments of counsel, does hereby ORDER, ADJUDGE and DECREE as follows:
>
> 1. MACO's Motion to Disburse Funds is denied;
> 2. The Clerk and Master is directed to hold the disputed funds pending a final disposition of the appeal now pending before the Court of Appeals in Case No. 01–A–01–9307–CV–00298 and a final disposition of any appeal taken in this matter; and
> 3. The Clerk and Master is further directed pursuant to Tennessee Rule of Civil Procedure 54.02 to enter this Order, as well as the Order of Judgment previously entered on July 26, 1993, as the final judgment of this Court in this cause so that the parties may perfect any appeal, there being no just reason for delay.

This court affirmed the chancellor's decision and CCRA sought permission to appeal from the Supreme Court. While the application was pending in the Supreme Court, Central, MACO's successor as the railroad operator, sought to recover the funds itself. Its argument, supported by CCRA, was that according to the amended operating agreement the funds had to be used in maintaining and servicing the railroad. Central, therefore, argued that it was the logical choice, because it was the only entity in a position to use the funds for that purpose. The chancellor denied Central's motion and incorporated the following in his order: "the disposition of the disputed funds is controlled by a prior order of this Court, entered on September 21, 1993 at Minute Book 180, Page 275." The order referred to is the order quoted above.

The Supreme Court denied permission to appeal on February 27, 1995. MACO, CCRA and Central all moved immediately to recover the funds. On March 27, 1995 the chancery court ordered the funds disbursed to MACO.

## II.

■ On appeal CCRA and Central argue that the chancery court and this court lack subject matter jurisdiction over CCRA because it is a state governmental entity entitled to sovereign immunity. Although this issue has not been raised before, subject matter jurisdiction may be raised at any time. Rule 12.08 Tenn.R.Civ.Proc; *Gillespie v. State,* 619 S.W.2d 128 (Tenn.App.1981).

Central asserts that in the pleadings MACO admitted the following allegation: that CCRA "is a governmental agency of the State of Tennessee, which upon information and belief, is authorized by T.C.A. §§ 7–56–201, et seq." Because of the conclusiveness

of admissions made in the pleadings, Central argues that the issue is now foreclosed. See Rule 8.04 Tenn.R.Civ.Proc.; *John P. Saad & Sons, Inc. v. Nashville Thermal Transfer Corp.,* 642 S.W.2d 151, 152 (Tenn.App.1982).

We think, however, that Central reads too much into the admission. First, the allegation is that CCRA is a "governmental agency" of the State, not that it is a governmental entity entitled to sovereign immunity. Admitting that a plaintiff is an agency "authorized by T.C.A. §§ 7–56–201, et seq." is not an admission that CCRA is an arm of the state clothed with sovereign immunity.

Further, we are convinced that just as the parties cannot confer jurisdiction by agreement, they cannot deprive the courts of jurisdiction by agreement either. Or, stated differently, the parties cannot confer sovereign immunity by agreement where it does not otherwise exist.

On the merits of this claim, we are satisfied that CCRA is not entitled to state governmental immunity. It was not created by the state but by local governments, Tenn. Code Ann. § 7–56–201; it is governed by a board of directors appointed by local governments, Tenn.Code Ann. § 7–56–203(a); it is not governed by laws governing state entities, Tenn.Code Ann. § 7–56–205; and the state has no power of oversight, or other authority over it. CCRA is subject to the Governmental Entity Review Law, commonly called the "Sunset Law", found in Tenn.Code Ann. § 4–29–101, et seq. But the law applies to many entities, created pursuant to statutes passed by the legislature, that arguably are not arms of the state. See Tenn.Code Ann. § 4–29–212, et seq. We would be reluctant to hold that all of the entities mentioned in the Sunset Law were clothed with sovereign immunity.

### III.

CCRA asserts that MACO waived any claim to the funds paid into court, by its nonsuit at the beginning of the trial in 1993. We find in the record, however, the order entered at the end of that trial, which recites that the trial proceeded on (among other issues) "the competing claims of the CCRA and MACO to the sums deposited into the registry of the Court." Thus, we hold that MACO did not voluntarily dismiss its claim to the funds now in dispute.

### IV.

■ CCRA and Central assert that the funds paid into court were obligated to be spent on rehabilitation of the railroad. Section 8–12 of the amended agreement, however, only required MACO to use "any surplus of income over expenses" for the maintenance and rehabilitation of the railroad. We are convinced that the issue of whether MACO violated that provision of the agreement was—or should have been—tried in the prior litigation. Violation of that provision was certainly one of the reasons cited by CCRA for terminating the agreement in 1992. The 1994 opinion of this court reflects that "the conflicting claims of MACO and CCRA to the rental funds were joined in an interpleader action filed in the Chancery Court of Davidson County, which was consolidated with this case." The chancellor dismissed CCRA's claim and this court affirmed.

We think this issue has been decided and cannot be raised again. See *Massengill v. Scott,* 738 S.W.2d 629 (Tenn.1987). The record reflects that when MACO moved for a disbursement of the funds in September of 1993 (after the trial), the chancellor entered an order requiring the funds to be held until the two appeals then pending were decided. When the parties came back to court after this court had decided the two appeals, the chancellor's remarks from the bench made it clear that he considered the issue to have been decided, and that the funds were simply being held to see if that decision would be affirmed.

### V.

■ CCRA and Central argue that some of the funds being held by the court were paid after MACO was terminated in 1992, and even after 1994 when MACO's contract expired by its own terms. Assuming that MACO's right to the rental payments was affected by those two events, neither appellant cites the record where evidence of the

various payments may be found or where the issue was presented to the trial court. Under Rule 6(b) of the Rules of this court, this issue can be ignored because of the lack of specific references to relevant pages of the record. Though we ordinarily are not inclined to invoke Rule 6(b) when a party raises a legitimate issue, we must do so in this case because of the sheer size of the record.

The judgment of the court below is affirmed and the cause is remanded to the Chancery Court of Davidson County for the enforcement of its judgment. Tax the costs on appeal to the appellants.

HENRY F. TODD, Presiding Judge, M.S., and LEWIS, J., concur.