RECOMMENDED FOR FULL-TEXT PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 13a0186p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

———————————

THE TOWN OF SMYRNA, TENNESSEE,
　　　　　　　　　*Plaintiff-Appellee*,

　　　*v.*

THE MUNICIPAL GAS AUTHORITY OF
GEORGIA,
　　　　　　　　　*Defendant-Appellant.*

No. 12-5476

Appeal from the United States District Court
for the Middle District of Tennessee at Nashville.
No. 3:11-cv-00642—Kevin H. Sharp, District Judge.

Argued: January 25, 2013

Decided and Filed: July 19, 2013

Before: NORRIS, MOORE, and DONALD, Circuit Judges.

———————————

## COUNSEL

**ARGUED:** Jay D. Bennett, ALSTON & BIRD LLP, Atlanta, Georgia, for Appellant. Jessalyn H. Zeigler, BASS BERRY SIMS PLC, Nashville, Tennessee, for Appellee. **ON BRIEF:** Jay D. Bennett, Nowell D. Berreth, ALSTON & BIRD LLP, Atlanta, Georgia, Paul S. Davidson, WALLER LANSDEN DORTCH & DAVIS LLP, Nashville, Tennessee, for Appellant. Jessalyn H. Zeigler, Joshua R. Denton, BASS BERRY SIMS PLC, Nashville, Tennessee, Douglas Berry, HUBBARD, BERRY & HARRIS, PLC, Nashville, Tennessee, for Appellee.

———————————

## OPINION

———————————

　　　BERNICE B. DONALD, Circuit Judge. This case is before us on interlocutory appeal of the district court's denial of sovereign immunity to the appellant Municipal Gas Authority of Georgia (the "Gas Authority"). The heart of the dispute is the Gas Authority's proposed interpretation of *Kyle v. Georgia Lottery Corporation*, 718 S.E.2d

801, 802-04 (Ga. 2011): that any entity referred to as a state "instrumentality" in a Georgia statute is entitled to Georgia state-law sovereign immunity. The Gas Authority's suggested interpretation, however, requires quite a stretch of the imagination. For this and the following reasons, we affirm.

## I.

The Gas Authority is a natural gas provider formed in 1987 by the Georgia General Assembly. Ga. Code Ann. § 46-4-82(a) (2012). Its purpose is to provide member municipalities with natural gas. To this end, it acquires, constructs, operates, and maintains facilities for the storage, acquisition, and distribution of natural gas. *Id.* § 46-4-95. The Gas Authority raises its own funds, receiving no funding from the state of Georgia. It operates on a non-profit basis, distributing excess profits, as well as losses, to its member municipalities. *Id.* § 46-4-97. It pays for its own operating expenses and must provide funding for any judgments against it. *Id.* § 46-4-97. It is exempt from the state-law provisions on financing and investment for state entities, *id.* §§ 46-4-82, 50-17-21, and it has discretion over the accumulation, investment, and management of its funds, *id.* § 46-4-96(a)(10), (11). It sets its own rules for governance, *id.* § 46-4-92, and its members elect its leaders from among the member municipalities, *id.* §§ 46-4-88, 46-4-89.

The Gas Authority sells natural gas to seventy-eight member municipalities: sixty-four of these are Georgia municipalities; two are Tennessee municipalities, including the plaintiff Town of Smyrna, Tennessee ("Smyrna"); and others are municipalities in Alabama, Florida and Pennsylvania. Smyrna has contracted with the Gas Authority since 2000. The pipeline that delivers gas to Smyrna does not run through the state of Georgia.

The underlying dispute in this case is essentially a disagreement over the price of gas. The Gas Authority committed to a multi-year "hedge" contract for its acquisition of gas, setting a contract price and volume of gas through the year 2014, and then passed these costs on to Smyrna. After this hedge contract was in place, the "spot price," or market price, of natural gas fell due to the increased use of hydraulic fracturing or

"fracking." So, although gas was less expensive in the market generally, it was not less expensive to Smyrna, who was still paying the Gas Authority according to the higher price and volume set between the Gas Authority and its suppliers. In July 2011, Smyrna sued the Gas Authority for breach of contract, violations of the Tennessee Consumer Protection Act, breach of fiduciary duty, and unjust enrichment for entering into these long-term hedge contracts and passing the allegedly unauthorized charges on to Smyrna.

After seven months of litigation, including discovery, the Gas Authority filed a motion to dismiss, arguing that it was entitled to sovereign immunity under Georgia law and under the Eleventh Amendment. On April 17, 2012, the district court denied the motion. The Gas Authority now appeals the denial of sovereign immunity under Georgia law and the Eleventh Amendment. It has also filed a motion seeking certification of the question of whether it is entitled to sovereign immunity under Georgia law to the Supreme Court of Georgia.

## II.

As the issue of sovereign immunity is before us on interlocutory appeal, we must address our jurisdiction.[1] Normally, under 28 U.S.C. § 1291, our jurisdiction is limited to appeals from "final decisions" of the district court. When a decision "finally determine[s] claims of right separable from, and collateral to, rights asserted in the action," however, we may have jurisdiction under what has come to be known as the collateral order doctrine. *Cohen v. Beneficial Indus. Loan Corp.*, 337 U.S. 541, 546 (1949). It is well-settled that the collateral order doctrine gives us jurisdiction over appeals of the denial of Eleventh Amendment sovereign immunity. *P.R. Aqueduct & Sewer Auth. v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 142-44, 147 (1993); *Mingus v. Butler*, 591 F.3d 474, 481 (6th Cir. 2010). We have also extended the collateral order

---

[1]Smyrna correctly points out that the Gas Authority does not adequately establish the basis for our jurisdiction for interlocutory review of sovereign immunity issues in its opening brief, as required by Federal Rule of Appellate Procedure 28(a)(4)(B). (Appellant Br. 1 (citing 28 U.S.C. § 1291 (the final judgment rule); *Holst-Orsted v. City of Dickson*, 641 F.3d 230, 236 (6th Cir. 2011) (on the applicability of the collateral order doctrine to discovery orders).) However, we have held that an error in the jurisdictional invocation does not prevent our review. *United States v. Baggett*, 251 F.3d 1087, 1092 n.3 (6th Cir. 2001). The Gas Authority sufficiently addresses our jurisdiction in its reply brief.

doctrine to denials of state law immunity, so long as the state immunity alleged would provide immunity from suit, as opposed to mere immunity from liability. *Sabo v. City of Mentor*, 657 F.3d 332, 336 (6th Cir. 2011); *Chesher v. Neyer*, 477 F.3d 784, 793-94 (6th Cir. 2007). Georgia's sovereign immunity laws provide immunity from suit. Ga. Const. art. 1, § 2, para. IX. Therefore, we have jurisdiction over both issues on appeal. *See also Root v. New Liberty Hosp. Dist.*, 209 F.3d 1068, 1069 (8th Cir. 2000) (reviewing state-law sovereign immunity claims on interlocutory review); *Ferguson v. Texarkana, Tex.*, No. 98-40403, 1999 WL 152936, at *1 (5th Cir. 1999) (same).[2]

We review the legal question of whether a body is entitled to sovereign immunity de novo, but accept any underlying factual findings made by the district court unless such findings are clearly erroneous. *S.J. v. Hamilton Cnty.*, 374 F.3d 416, 418 (6th Cir. 2004).

## III.

### A. Choice of Law

Before addressing the question of the Gas Authority's sovereign immunity under Georgia law, we have the task of determining whether Georgia law even applies to the defense. The district court merely assumed that Georgia law applies and moved on to the sovereign immunity question. Smyrna asks that we affirm the denial of state-law sovereign immunity on the alternative grounds that Georgia sovereign immunity law does not apply because Tennessee law governs the underlying claims. *See Murphy v. Nat'l City Bank*, 560 F.3d 530, 535 (6th Cir. 2009) ("Appellate courts may affirm on alternative grounds supported by the record."). Although the district court's method is tempting, when sitting in diversity we must apply the choice of law rules of the forum state to determine which state's laws govern the dispute. *Montgomery v. Wyeth*, 580 F.3d 455, 459 (6th Cir. 2009); *Johnson v. Ventra Grp.*, 191 F.3d 732, 738 (6th Cir.

---

[2]Because interlocutory review is permitted for state-law sovereign immunity defenses under the collateral order doctrine, we need not address the Gas Authority's alternative argument that we may exercise pendent appellate jurisdiction over the state-law defense.

1999).   Smyrna filed suit in the Middle District of Tennessee, so we begin with Tennessee's choice of law rules.  *See Johnson*, 191 F.3d at 738-39.

For claims based on a contract, Tennessee follows the rule of *lex loci contractus*, meaning it presumes that the claims are governed by the jurisdiction in which it was executed absent a contrary intent.  *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999).  If the parties contracted to be governed by the law of another jurisdiction, Tennessee will honor that choice so long as the provision was executed in good faith, there is a material connection between the law and the transaction, and the chosen law is not contrary to the fundamental policies of Tennessee.  *Id*.

The Gas Authority contends that the parties contracted to be governed by Georgia law, pointing to the following provision in its 2005 Gas Supply Contract with Smyrna, under the "Severability" section:

> In case any one or more of the provisions of this contract shall for any reason be held to be illegal or invalid . . . this contract shall be construed and enforced as if such illegal or invalid provision had not been contained herein, and this contract shall be construed *to adopt*, but not to enlarge upon, all the applicable provisions of said [Gas Authority] Act, and *all the applicable provisions of the Constitution and general laws of Georgia*, and, if any provisions hereof conflict with any applicable provision of said Constitution or laws, the latter as adopted by the General Assembly of Georgia and as interpreted by the courts of this state shall prevail in lieu of any provision hereof in conflict or not in harmony therewith.

Gas Supply Contract, art. IX (emphasis added).  A claim that a particular contract provision operates as a choice of law provision is itself a claim based on a contract, therefore we use the contract interpretation law of the jurisdiction in which the purported choice of law agreement was signed.  The 2005 Gas Supply Contract was executed in Tennessee.  Thus, we use Tennessee contract law to discern the nature and validity of the term.

Tennessee would interpret this provision to ascertain the intent of the parties, according to the natural meaning of the words, giving effect to every term, and

construing any ambiguity against the drafter (here, the Gas Authority). *Vantage Tech*, 17 S.W.3d at 650. Smyrna would have us conclude that this is merely a severability provision designed to avoid any conflicts with Georgia law. This proposed interpretation makes some sense because the Gas Authority is created and its activities are defined by Georgia statute, but if that were the full meaning, the provision would merely conclude after adopting "all the applicable provisions of the [Gas Authority] Act." Giving meaning to all the terms, as we must, we cannot ignore the latter statement in which the contract adopts "all the applicable provisions of the Constitution and general laws of Georgia." These terms can have no meaning other than establishing that the contract is to be governed under Georgia laws. The clause operates as a choice of law provision.

Moreover, nothing before us suggests that the clause is invalid. The parties have presented no evidence suggesting that the contract was submitted in bad faith, that it bears no material connection to Georgia or that Georgia was selected for legal subterfuge, or that Georgia law is contrary to the fundamental policies of Tennessee law. *See Vantage Tech*, 17 S.W.3d at 650. Therefore, we must presume that Georgia law governs the contract itself and any claims arising out of it. Georgia would apply its own sovereign immunity law to these claims.

Our analysis cannot stop here, however, because Smyrna also alleged claims for breach of fiduciary duty and violations of the Tennessee Consumer Protection Act. Nothing in the choice of law contract provision suggests that it extends to tort claims. We conclude that Tennessee law applies to these non-contract claims,[3] and under such law, Tennessee would apply Georgia sovereign immunity law as a matter of comity.

---

[3]For claims lying in tort, Tennessee uses the "most significant relationship" test, considering: the place of the injury, the place where the conduct causing the injury occurred, the place of incorporation or place of business of the parties, and the place where the relationship is centered. *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992). Here, the alleged injury is an economic loss, so it occurred in Smyrna, Tennessee. *See Carbon Processing & Reclamation, LLC v. Valero Mktg. & Supply Co.*, No. 09-2127-STA, 2011 WL 4915886, at *5 (W.D. Tenn. Oct. 17, 2011) (noting that an economic injury occurred in the injured party's principle place of business). The alleged conduct occurred in both Tennessee and Georgia, but the relationship is centered in Tennessee, where the gas is delivered and where the contract was negotiated. The Gas Authority is an entity created in Georgia, but it serves municipalities in five states, and the gas line delivering gas to Smyrna does not even run through Georgia. These factors, when viewed in combination, suggest that Tennessee law would apply.

While Tennessee has no constitutional obligation to recognize the sovereign immunity that a sister state may have granted to a citizen, *see Nevada v. Hall*, 440 U.S. 410, 426-27 (1979), Tennessee courts choose to do so, in their discretion, in the interest of comity and state harmony. *E.g.*, *Lemons v. Cloer*, 206 S.W.3d 60, 69 (Tenn. Ct. App. 2006). Tennessee will enforce a sister state's sovereign immunity to a defendant state entity so long as the other state's rules are not "contrary to the policy of Tennessee," as found in its constitution, statutes, and court decisions. *Id.* at 69 (internal quotations omitted). This standard does not require identical state policies or identical hypothetical results—merely a certain harmony.

The sovereign immunity policies of Georgia are sufficiently harmonious with its own that Tennessee would honor Georgia's policies. Both states grant sovereign immunity to certain state entities. *See* Tenn. Code Ann. § 29-20-201(a) (2012); Ga. Const. art. 1, § 2, para. IX. Both states extend such immunity to certain "instrumentalities" or agencies of the state, but not to certain others such as municipalities. *Nat'l Advertising, Inc. v. McCormick Ashland City & Nashville R.R.*, 936 S.W.2d 256, 258 (Tenn. Ct. App. 1996); *Miller v. Ga. Ports Auth.*, 470 S.E.2d 426, 428 (Ga. 1996). Georgia law suggests that the structure and activities of the entity, not merely its nomenclature, determines whether an entity is immune. *Kyle v. Ga. Lottery Corp.*, 718 S.E.2d 801, 802-04 (Ga. 2011). Tennessee, too, has case law suggesting that the supervision, control, and funding of the entity, not merely the nomenclature, determines whether an entity qualifies for sovereign immunity. *E.g.*, *Nat'l Advertising*, 936 S.W.2d at 258; *Hastings v. S. Cent. Human Res. Agency*, 829 S.W.2d 679, 682 (Tenn. Ct. App. 1991). Neither state has case-law directly establishing whether a natural gas cooperative is entitled to sovereign immunity, but the laws are similar enough that Georgia policies are in no way "contrary to" Tennessee public policy under *Lemons*. 206 S.W.3d at 69. Tennessee would, therefore, honor any sovereign immunity that Georgia itself would extend to the Gas Authority. Thus, we must look to Georgia law to determine whether the Gas Authority is entitled to sovereign immunity.

**B. Sovereign Immunity Under Georgia Law**

The Gas Authority asserts that it has sovereign immunity under the Georgia Supreme Court's recent decision in *Kyle v. Georgia Lottery Corporation*. 718 S.E.2d 801, 802-04 (Ga. 2011). According to the Gas Authority's proposed interpretation, *Kyle* held that anything called a state instrumentality is entitled to sovereign immunity. Because the Gas Authority is called an "instrumentality" under its enacting statute, *see* Ga. Code Ann. § 46-4-82(a), it argues, it is entitled to sovereign immunity regardless of the "public policy dicta" in *Kyle* suggesting that entities must have a purpose, function, and management that is intertwined with the state to be classified as a state instrumentality.

The Gas Authority's interpretation of *Kyle* is based on an erroneous reading of the case. *Kyle* addressed whether the Georgia Lottery Corporation ("GLC") is entitled to sovereign immunity under state law. *Kyle*, 718 S.E.2d at 802-04. The court began by saying, "Because sovereign immunity applies to state instrumentalities, GLC is entitled to assert sovereign immunity as a defense." *Id*. at 802. This sentence was not the entire holding of the case, as the Gas Authority contends, however, but the beginning of the analysis. The remainder of the opinion is dedicated to discerning whether the GLC is the kind of state entity that is entitled to sovereign immunity, namely, whether it is a state instrumentality.

The court then reviewed two prior cases in which it had developed state sovereign immunity law in light of recent state constitutional and statutory changes. *Id*. (citing *Youngblood v. Gwinnett Rockdale Newton Cmty. Servs. Bd.*, 545 S.E.2d 875, 876-78 (Ga. 2001); *Miller*, 470 S.E.2d at 427-28). The court noted that in *Miller*, it held that under a 1991 amendment to the Georgia Constitution and the contemporaneous Georgia Tort Claims Act, all "state agencies," including "all state government entities, *regardless of their nomenclature*" are entitled to sovereign immunity. *Id*. at 802-03 (emphasis added) (internal quotations omitted); *see also  Miller*, 470 S.E.2d at 427-28. Prior to *Miller*, the Georgia courts drew a line between state agencies, which enjoyed sovereign

immunity, and state instrumentalities, which did not. *Kyle*, 718 S.E.2d at 804 (citing *Jackson v. Ga. Lottery Corp.*, 491 S.E.2d 408, 411 (Ga. Ct. App. 1997)). The *Kyle* court noted that this distinction is outdated and that it had overruled earlier cases making distinctions based on nomenclature alone. *Id.* at 804. These new laws interpreted in *Miller* had made immunity for state entities the default, waiving immunity only in certain instances, thus "limiting the state treasury's exposure to tort liability." *Id.* at 803 (quoting *Miller*, 470 S.E.2d at 426). The new definition of state entities includes what the court called "instrumentalities." *Id*. (quoting *Miller*, 470 S.E.2d at 426).

The court moved on to the later case of *Youngblood*, which, like *Kyle*, did not address the question of whether state instrumentalities are immune, but *when* an entity is a state instrumentality that is entitled to immunity. *See id*. at 803-04 (citing *Youngblood*, 545 S.E.2d at 875-78). To answer this question, the court reviewed the enacting statute of the defendant community service board, looking specifically at the *purpose* of the board to determine whether it is a state instrumentality. *See id*. at 803-04 (citing *Youngblood*, 545 S.E.2d at 875-78).

Building on its analysis from *Miller* and *Youngblood*, the *Kyle* court considered several factors to determine whether the GLC is an instrumentality. First, it noted that the GLC is called an "instrumentality" under its enacting statute, Ga. Code Ann. § 50-27-4, but the analysis did not stop there. *Kyle*, 718 S.E.2d at 804. It then considered the purpose of the GLC, which is to generate funding for state educational programs; its governing structure, a board of directors appointed by the governor; and the beneficiary of its profits, the state treasury. *Id.* Finally, the court considered the GLC's accountability to the General Assembly and to the public through audits and reports. *Id.* "Therefore, the purpose, function, and management of GLC are indelibly intertwined with the State *in a manner that qualifies it for the protection of sovereign immunity* as a State instrumentality." *Id.* (emphasis added). Thus, the *Kyle* court recognized its precedent establishing that state entities, including state instrumentalities, are entitled to sovereign immunity, and it created a test for discerning when an entity fits in that category, "regardless of [its] nomenclature." *See id.* at 803, (quoting *Miller*, 470 S.E.2d

at 427-28). Using the factor test, then, a court must ask 1) what is the entity called under its enacting statute, and 2) is the entity's "purpose, function, and management" "indelibly intertwined" with the state. *Id.* at 804. This analysis was not "public policy dicta" as the Gas Authority contends, but essential to the court's holding.

The Gas Authority asks us to certify the question of whether it is entitled to sovereign immunity to the Supreme Court of Georgia, arguing that *Kyle* is ambiguous. We do not consider *Kyle* ambiguous. The Gas Authority's only basis for this suggestion seems to be that the parties argue for different interpretations of *Kyle*. But, as we explained above, the Gas Authority's proposed interpretation is unsupported. Even if we saw a possibility for an alternative interpretation, we do not trouble our sister state courts where "we see a reasonably clear and principled course" of action. *Berrington v. Wal-Mart Stores, Inc.*, 696 F.3d 604, 610 (6th Cir. 2012) (internal quotations omitted); *see also Geronimo v. Caterpillar, Inc.*, 440 F. App'x 442, 449 (6th Cir. 2011) ("[T]he appropriate time to seek certification of a state-law issue is before a District Court resolves the issue, not after receiving an unfavorable ruling." (internal quotations omitted)); *Am. Booksellers Found. for Free Expression v. Strickland*, 560 F.3d 443, 446 (6th Cir. 2009) (noting that certification is appropriate when state-law is susceptible of construction that might avoid federal adjudication or materially change the nature of the problem). Even if we were to certify the question, the Supreme Court of Georgia would probably decline to answer the question because it has discretion to take questions of Georgia law only where "there are no clear controlling precedents in the appellate court decisions of this State." R. Sup. Ct. Ga. 46. *Kyle* is the controlling precedent on the issue at hand. Accordingly, we decline to certify this question to the Supreme Court of Georgia.

The only task that remains is to apply the test from *Kyle*, looking first at the nomenclature used in the Gas Authority's enacting statute, and second at the Gas Authority's governing structure, profit distribution, and accountability to determine whether its purpose, management and function are "indelibly intertwined" with the state

of Georgia. *Kyle*, 718 S.E.2d at 804. We are guided by how the *Kyle* court viewed the various factors in regard to the GLC.

Like the GLC, the Gas Authority is referred to as "an instrumentality of the state" in its enacting statute, Ga. Code Ann. §§ 46-4-82, 50-17-21(1), but the similarities end there. Unlike the GLC, the Gas Authority's purpose is not provided for in the Georgia Constitution and it does not benefit the general Georgian public. Its purpose is to "provide municipalities a reliable, economical supply of natural gas and to assist them in developing and growing their gas systems to optimize the benefits of public ownership." Although it is described as an entity that supplies gas for the "public," *id.* §§ 46-4-80, 46-4-98(a), the Gas Authority is structured such that it benefits only municipalities that choose to become members. *Id.* §§ 46-4-96(a)(5), (a)(7). And members are not necessarily from Georgia; current member municipalities are located in Alabama, Florida, Georgia, Pennsylvania, and Tennessee. The pipeline that delivers gas to Smyrna does not even run through the state of Georgia.

Nor is the Gas Authority's function intertwined with the state. Unlike the GLC, which gives its profits to the state for the benefit of public education in Georgia, the Gas Authority operates as an independent non-profit corporation. *Id.* §§ 46-4-82; 46-4-97. Its profits and losses are distributed to the member municipalities, and it receives no state funding, as it must pay for its own operations and "*provide for payment of any judgment* against" it. *Id.* § 46-4-97 (emphasis added). It is expressly exempt from the provisions on financing and investment for state entities, *id.* §§ 46-4-82, 50-17-21, and it makes its own decisions on accumulation, investment, and management of its funds, *id.* §§ 46-4-96(a)(10), (11). The Gas Authority acts as an "agent" for the municipalities it serves and provides services "to and for the benefit of the political subdivisions." *Id.* §§ 46-4-96(a)(5), (a)(13).

Finally, the Gas Authority's management is in no way intertwined with the state or otherwise similar to that of the GLC. The GLC is subject to heavy administrative oversight by the state; it must send detailed quarterly reports and audits to the governor

and other state representatives, and it must submit its annual budget to the Office of Planning and Budget. *Id.* §§ 50-27-33(1), (5). The Gas Authority, however, makes its own rules for governance, *id.* § 46-4-92, sets compensation for its employees as it chooses, *id.* § 46-4-96(a)(4), and hires an independent accountant of its own choosing for annual audits, *id.* § 46-4-120. While the GLC is governed by board members appointed by the governor, the Gas Authority is governed by leaders elected by the member municipalities, who serve at the pleasure of the municipalities. *Id.* §§ 46-4-88, 46-4- 89. The Gas Authority is exempt from Georgia Public Service Commission regulation, *id.* § 46-4-122, and it even has the discretion to delegate its powers to its own appointed agents, *id.* § 46-4-96(a)(4).

In summation, the purpose, function, and management of the Gas Authority is far less "indelibly intertwined with the State" than that of the GLC. The "instrumentality" nomenclature is the only factor that weighs in favor of sovereign immunity here, but that cannot be enough because otherwise the *Kyle* court would not have engaged in the factor analysis. The Gas Authority is not entitled to sovereign immunity under Georgia law.

**C. Sovereign Immunity under Eleventh Amendment Doctrine**

The Gas Authority also contends that it is entitled to sovereign immunity under the Eleventh Amendment doctrine. Immunity under the Eleventh Amendment is considered a "fundamental aspect of [state] sovereignty," *Alden v. Maine*, 527 U.S. 706, 713 (1999), serving to "protect the solvency and the dignity of the states." *Lowe v. Hamilton Cnty. Dep't of Jobs & Family Servs.*, 610 F.3d 321, 324 (6th Cir. 2010). Eleventh Amendment immunity attaches only to defendants that are the state itself or an "arm of the State." *Ernst v. Rising*, 427 F.3d 351, 358 (6th Cir. 2005) (en banc) (internal quotations omitted). Whether an entity qualifies is a question of federal law and the entity asserting the defense bears the burden of proof. *Lowe*, 610 F.3d at 324, 330; *Gragg v. Ky. Cabinet for Workforce Dev.*, 289 F.3d 958, 963 (6th Cir. 2002).

We use the following non-exhaustive list of factors to determine whether a particular entity is owed sovereign immunity: 1) "the State's potential liability," 2) "the language by which [the] state . . . refer[s] to the entity and the degree of state control . . . over the entity," 3) "whether state or local officials appoint the board members of the entity," and 4) "whether the entity's functions fall within the traditional purview of state or local government." *Pucci v. Nineteenth Dist. Ct.*, 628 F.3d 752, 760 (6th Cir. 2010) (citing *Ernst*, 427 F.3d at 359.) We have noted that the vulnerability of the state's coffers is the most salient issue. *Ernst*, 427 F.3d at 359.

The district court made an express finding that these claims present no potential liability to the coffers of the state of Georgia—which comes as no surprise because the Gas Authority is responsible for its own expenses, including judgments, Ga. Code Ann. § 46-4-97. The Gas Authority argues that if the "language" the state uses to refer to the entity suggests that the entity is part of the state, the liability to the entity would be the same as liability to the state coffers. This is not what we meant in *Pucci*; otherwise factor two would be irrelevant on its own. As for the second factor, the state does occasionally use language to describe the Gas Authority that could apply to a state entity, but there are also extensive statutory provisions granting independent functioning and a lack of state control. *E.g.*, *Id.* §§ 46-4-97 (self-funding), 46-4-96(10),(11) (discretion over investments and growth), 46-4-92 (self-governance). Nor does the third factor weigh in favor of immunity, as the member municipalities self-select their own leadership. *Id.* §§ 46-4-88 and 89. As for the fourth factor, an entity's function falls within the purview of the state government if it is a "long-recognized state function." *Pucci*, 628 F.3d at 764. The Gas Authority acquires, develops and sells natural gas to municipalities in five different states. This is best described as a commercial activity. It is not like the court system mandated by a state constitution in *Pucci*, 628 F.3d at 764, or a state retirement system funded by the legislature and operating on a state-wide basis like that in *Ernst*, 427 F.3d 362. The district court did not err in denying Eleventh Amendment immunity.

**IV.**

For the foregoing reasons, we conclude that the Gas Authority is not entitled to sovereign immunity under Georgia law or under the Eleventh Amendment doctrine. Accordingly, we AFFIRM the interlocutory decision of the district court. Additionally, the Gas Authority's motion for certification to the Supreme Court of Georgia is DENIED.