NOT RECOMMENDED FOR PUBLICATION
File Name: 24a0159n.06

No. 22-1912

**UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**

**FILED**
Apr 10, 2024
KELLY L. STEPHENS, Clerk

|  |  |  |
|---|---|---|
| TONYA BOWLES, | ) | |
| Plaintiff-Appellee, | ) ) ) | ON APPEAL FROM THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF MICHIGAN |
| v. | ) ) ) | |
| ERIC R. SABREE, et al., | ) | |
| Defendants-Appellants. | ) ) ) | OPINION |

Before: KETHLEDGE, STRANCH, and MATHIS, Circuit Judges.

KETHLEDGE, Circuit Judge. Tonya Bowles sued Wayne County and its Treasurer, Eric Sabree, for taking "absolute title" to her home as payment for a tax delinquency that amounted to less than her home's value. Wayne County and Treasurer Sabree later filed a motion to dismiss, arguing among other things that they were each entitled to sovereign immunity. The district court rejected that argument and denied the motion. We affirm in part and reverse in part.

I.

Wayne County took title to Bowles's home under the Michigan General Property Tax Act, which prescribed the process for tax foreclosures in the State. *See generally* Mich. Comp. Laws §§ 211.1–.155; Act of June 1, 1893, Pub. L. No. 206, 1893 Mich. Pub. Acts 354. By way of background, before 1999, the Act allowed counties to place a tax lien, in the amount of any unpaid taxes, upon the property of a delinquent taxpayer. *See* Mich. Comp. Laws § 211.40. The property owner then had roughly two years to "redeem" that lien—meaning to remove it from the

property—by payment of all unpaid taxes, interest, and fees. If the owner failed to do so, the Act allowed the county to sell the lien at a public auction. *See id.* § 211.60. The sale of the tax lien did not transfer the property itself or affect "title"; instead, it merely vested in the purchaser—usually a private third party—the right to enforce the lien against the property owner. *See Rafaeli, LLC v. Oakland Cnty.*, 952 N.W.2d 434, 443 n.10 (Mich. 2020). Following that sale, the property owner had another year to redeem the lien; if she failed to do so, the state "deeded" the property to the tax-lien purchaser, who was ultimately "responsible for the final foreclosure[.]" *Id.*; *see also* Kevin T. Smith, Foreclosure of Real Property Tax Liens, 75 Mich. Bar J. 953 (1996).

But that process took years and often left the titles of affected properties in disarray. *Id.* As a result, in 1999, the Michigan Legislature amended the Act to promote the speedy "return" of delinquent properties to "productive" uses. Mich. Comp. Laws § 211.78(1). The Act sought to achieve that goal in various ways, one of which was by giving each county the option to foreclose on tax-delinquent properties itself. *Id.* § 211.78(3), (6). Specifically, the Act allowed each county to designate its county treasurer as a "foreclosing governmental unit"—statutory jargon for the entity permitted to seek foreclosures under the Act. *Id.* § 211.78(8). Yet the Act did not require counties to make that election; rather, the decision was "voluntary." *Id.* § 211.78(6). If a county chose not to seek foreclosures, the State would do so. *Id.* § 211.78(3)(a), (8)(a)(ii). In 1999, Wayne County elected to seek foreclosures itself; and thus, per the Act, its county treasurer was designated as the "foreclosing governmental unit" on its behalf.

Under the Act as amended, on March 1 of each year, property taxes that remained unpaid during the preceding twelve months were "returned as delinquent for collection." *Id.* § 211.78a(2). If taxes for a property remained unpaid by March 1 of the next year, the property was "forfeited to the county treasurer[.]" *Id.* § 211.78g(1). Forfeiture itself did "not affect title"; instead, it merely

allowed the "foreclosing governmental unit"—the county treasurer (or the State if the county chose not to seek foreclosures)—to petition for a "judgment of foreclosure" as to the property. *See Hall v. Meisner*, 51 F.4th 185, 188 (6th Cir. 2022).

If a county treasurer foreclosed on a forfeited property, the Act required him to file a petition to that effect in the state circuit court by June 15 of the year of the forfeiture. Mich. Comp. Laws § 211.78h. Meanwhile, the property owner was provided with various notices of the foreclosure process and of her right to "redeem" the property—meaning the right to remove it from that process—by payment of all outstanding taxes, interest, penalties, and fees. *Id.* §§ 211.78b, 211.78c, 211.78f. If the owner did not redeem, the Act required the state circuit court to enter a foreclosure judgment that vested "absolute title" to the property in the county treasurer. *Id.* § 211.78k(6). After obtaining the property, the Act required the county treasurer to give the state and the relevant city or township an option to buy it. *Id.* § 211.78m(1). If those entities declined, the county treasurer could sell the property at a foreclosure auction. *Id.* § 211.78m(1)–(2). "No matter what the sale price, however, under the Act the property's former owner had no right to any of the proceeds." *Hall*, 51 F.4th at 188 (citation omitted).

In March 2017, per the Act as described above, Wayne County Treasurer Eric Sabree—the "foreclosing governmental unit" for Wayne County, *see* Mich. Comp. Laws § 211.78(8)(a)—foreclosed on the home of Tonya Bowles to collect a tax delinquency. He later sold the property at an auction for more than the amount of the delinquency, but never provided Bowles with any of the surplus proceeds.

In December 2020, Bowles brought this putative class action under 42 U.S.C. § 1983 against Wayne County and Sabree in his official and personal capacities. Bowles asserted claims under the Fifth Amendment's Takings Clause (as applied to the states through the Fourteenth),

along with various other federal and state claims. The defendants then moved to dismiss the complaint, arguing among other things that Wayne County and Sabree (in his official capacity) were each entitled to sovereign immunity. They also argued that the claims against Sabree were "duplicative" of those against Wayne County, and hence that the district court should dismiss Sabree from the lawsuit as a matter of judicial economy. The district court rejected both arguments and denied the motion to dismiss. This interlocutory appeal followed.

## II.

Our jurisdiction is limited to the question whether the defendants are entitled to sovereign immunity under the Eleventh Amendment. *See Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645 (6th Cir. 2013). We review that question de novo. *Id*. The Eleventh Amendment bars lawsuits against a state or its officers in federal court for damages; but it generally does not bar lawsuits against counties or their officers, neither of which share the states' sovereign immunity. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 102-03 (1984); *N. Ins. Co. of N.Y. v. Chatham Cnty.*, 547 U.S. 189, 193 (2006).

The defendants' principal argument here is that Sabree is entitled to sovereign immunity. We usually treat claims against an officer in his official capacity as claims against the governmental entity the officer represents. *See Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). Here, Sabree is undisputedly an officer of the County, not the State; thus, a suit against him in his official-capacity is presumably one against the County itself. Yet claims of this sort are often more complicated, for county officials "sometimes wear multiple hats, acting on behalf of the county *and* the State." *Crabbs v. Scott*, 786 F.3d 426, 429 (6th Cir. 2015). In that setting, "immunity hinges on whether the officer represents the State in the particular area or on the particular issue in question." *Id.* (cleaned up). When a county official commits an alleged constitutional violation

by "complying with state mandates that afford no discretion," he acts "as an arm of the State." *Brotherton v. Cleveland*, 173 F.3d 552, 566 (6th Cir. 1999).

Here, the defendants argue that Sabree acted as an "arm of the State" because, defendants say, once Wayne County elected to seek foreclosures, Sabree was thereafter "duty bound to adhere to the Tax Act[.]" Appellant Br. at 35. Specifically, the defendants point to the undisputed fact that Sabree had no control over Wayne County's 1999 decision to seek foreclosures under the Act. And once the County made that decision, defendants say, state law directed all of Sabree's actions, including that he file "mandatory petitions for foreclosure with the circuit court under M.C.L. § 211.78h[.]" *Id*. at 35-36. Meanwhile, Bowles neither disputes these points nor offers a coherent argument as to why Sabree—as opposed to the County itself—is not entitled to sovereign immunity. Nor did the district court, for its part, acknowledge the distinction between the County and the Treasurer for purposes of sovereign immunity. Instead, it denied sovereign immunity to both on the ground that the County acted "without state compulsion." R.47, Pg. ID 697.

Yet here that distinction is crucial, for by all appearances Wayne County's decision to act as a "foreclosing governmental unit" left Sabree duty bound—under the Michigan Act—to foreclose on certain tax-delinquent properties. *See Brotherton*, 173 F.3d at 566. Specifically, § 211.78h of the Act, on its face, likely required Sabree to foreclose on all "forfeited" properties except those specifically enumerated in § 211.78h(3). *See* Mich. Comp. Laws § 211.78h; *cf. Harbor Watch Condo. Ass'n v. Emmet Cnty. Treasurer*, 863 N.W.2d 745, 748 (Mich. Ct. App. 2014). Thus, on the record presented to us here, Sabree was "complying with state mandates" that afforded him "no discretion" as to the actions for which he was sued here. That is true even though Bowles sued Sabree in his capacity as a county official—namely because, unlike the County, Sabree was duty bound to "enforce" state law. *Crabbs*, 786 F.3d at 430 (citation omitted). He is

therefore entitled to sovereign immunity under the Eleventh Amendment. *See Brotherton*, 173 F.3d at 566-67.

The defendants' remaining argument is that Wayne County itself is entitled to sovereign immunity. But the Supreme Court "has repeatedly refused to extend sovereign immunity to counties" qua counties. *Chatham Cnty.*, 547 U.S. at 193 (collecting cases); *see McNeil v. Cmty. Prob. Servs., LLC*, 945 F.3d 991, 997 (6th Cir. 2019). And the defendants do not argue that—as an entity—Wayne County categorically is an "arm of the State." *See Ernst v. Rising*, 427 F.3d 351, 359 (6th Cir. 2005) (en banc).

The argument the defendants do make is that, even if Wayne County ordinarily is not an "arm of the State," we should nonetheless consider it one here. Specifically, defendants say, once the County elected to seek foreclosures, the Michigan Act then required it take "absolute title" to Bowles's home. *See* Mich. Comp. Laws §§ 211.78(6), 211.78k(6). But the fact remains that the county took the actions at issue here only because the County chose to take them. That it chose to take these actions categorically—when it elected to act as a foreclosing governmental unit—does not make the actions any less voluntary on the County's part. Nor has the County explained why it is an "arm of the State" under the governing standard in this circuit. *See Ernst*, 427 F.3d at 359; *Fox v. Saginaw Cnty.*, 2022 WL 523023, at \*5 (6th Cir. Feb. 22, 2022). Wayne County is not entitled to sovereign immunity.

\*　　\*　　\*

We affirm the denial of sovereign immunity as to Wayne County, reverse the denial of sovereign immunity as to Treasurer Sabree, and remand the case for proceedings consistent with this opinion.