RECOMMENDED FOR PUBLICATION
Pursuant to Sixth Circuit I.O.P. 32.1(b)
File Name: 25a0342p.06

# UNITED STATES COURT OF APPEALS

## FOR THE SIXTH CIRCUIT

───────────────

JORGE ANDUJAR and FRANKLIN PENA BATISTA, on
behalf of themselves and all others similarly situated,
            *Plaintiffs-Appellants*,

            *v.*

HUB GROUP TRUCKING, INC.,

            *Defendant-Appellee*.

No. 25-5130

───────────────

Appeal from the United States District Court for the Western District of Tennessee at Memphis.
No. 2:24-cv-02296—Thomas L. Parker, District Judge.

Argued:  October 23, 2025

Decided and Filed:  December 16, 2025

Before: NALBANDIAN, MATHIS, and RITZ, Circuit Judges.

───────────────

## COUNSEL

**ARGUED:**  Harold Lichten, LICHTEN & LISS-RIORDAN, P.C., Boston, Massachusetts, for
Appellants.  Edna D. Guerrasio, PROSKAUER ROSE LLP, New York, New York, for Appellee.
**ON BRIEF:**  Harold Lichten, Matthew Thomson, LICHTEN & LISS-RIORDAN, P.C., Boston,
Massachusetts, Peter Winebrake, Mart Gottesfeld, WINEBRAKE & SANTILLO, LLC, Dresher,
Pennsylvania, for Appellants.  Edna D. Guerrasio, Allan S. Bloom, PROSKAUER ROSE LLP,
New York, New York, for Appellee.

───────────────

## OPINION

───────────────

MATHIS, Circuit Judge.  Jorge Andujar and Franklin Pena Batista worked for years as
delivery drivers for Hub Group Trucking, Inc.  In 2023, they filed a putative class action against

Hub Group, alleging that the company violated the New Jersey Wage Payment Law, N.J. Stat. Ann. § 34:11-4.1 et seq., and the New Jersey Wage and Hour Law, N.J. Stat. Ann. § 34:11-56a et seq. But Andujar and Batista had choice-of-law provisions in their contracts with Hub Group requiring Tennessee law to govern any disputes. So Hub Group sought to enforce these provisions and dismiss the New Jersey-law claims. The district court agreed with Hub Group and dismissed the action.

Plaintiffs now challenge the district court's dismissal. We hold that the choice-of-law provisions in the contracts are unenforceable because there is no material connection between Tennessee and the transactions at issue. We thus reverse the district court's dismissal of the complaint.

**I.**

Hub Group is a nationwide transportation and logistics management company. It has thousands of truck drivers transporting goods across the country for its customers. The company is incorporated in Delaware and headquartered in Illinois. It has dozens of terminals and offices throughout the country, including in Tennessee. Hub Group describes its Memphis terminal as "one of the [c]ompany's flagship facilities" that it "inherited" during its acquisition of Comtrak Logistics, Inc. R. 52-1, PageID 459.

Andujar and Batista, former Hub Group delivery drivers, worked out of the company's New Jersey terminal for over ten years. Hub Group paid them to pick up and deliver rail containers containing merchandise for customers such as Home Depot, Costco, and Best Buy. Andujar and Batista spent most of their time working in New Jersey, but they would sometimes deliver goods in nearby states such as New York or Connecticut.

Andujar and Batista worked for Hub Group under contracts titled "Independent Contractor and Equipment Lease Agreement." The agreements contain forum-selection clauses designating "state or federal courts sitting in Memphis, Tennessee" as the forum for any disputes related to the agreements. R. 48-4, PageID 95; R. 48-5, PageID 143. They also have choice-of-law provisions designating Tennessee law as governing "any and all claims or disputes" arising out of the Agreements. *Id.*

In September 2023, Plaintiffs filed a putative class action against Hub Group in the United States District Court for the District of New Jersey.  They alleged that Hub Group violated New Jersey's wage laws by: (1) withholding earnings from drivers' paychecks for fuel, tolls, and insurance; (2) requiring drivers to personally pay for work-related expenses like gas and vehicle repairs; and (3) failing to pay overtime wages.  The District of New Jersey transferred the case to the Western District of Tennessee based on the contracts' forum-selection clauses.  Hub Group then moved to dismiss the complaint.  The district court upheld the choice-of-law provisions in the contracts and dismissed the case because Tennessee law does not recognize Andujar and Batista's New Jersey statutory claims.  This appeal followed.

## II.

We review the district court's dismissal of a complaint for failure to state a claim de novo.  *McLemore v. Gumucio*, 149 F.4th 859, 863 (6th Cir. 2025).  We also review the district court's answer to a choice-of-law question de novo.  *Meridia Prods. Liab. Litig. v. Abbott Lab'ys*, 447 F.3d 861, 865 (6th Cir. 2006).

## III.

The district court exercised diversity jurisdiction over this action.  *See* 28 U.S.C. § 1332(d).  So state substantive law applies.  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996).  To determine which state's substantive law controls, a district court applies the choice-of-law rules of the state where it sits.  *See Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 496 (1941).  Here, because the district court sits in Tennessee, that state's choice-of-law rules govern.

Andujar and Batista brought claims against Hub Group for violating New Jersey's wage laws.  So they believe New Jersey law controls.  But in their respective contracts with Hub Group, Andujar and Batista agreed that Tennessee law should govern any dispute with Hub Group:

> [A]ny and all claims or disputes arising out of, in connection with, or relating to this Agreement, or the transactions or relationship between the parties contemplated and established by this Agreement, shall be governed and

interpreted by the laws of the State of Tennessee, without regard to the choice-of-law rules of that State or any other jurisdiction.

R. 48-4, PageID 95; R. 48-5, PageID 143.

Tennessee's choice-of-law rules require us to follow the law dictated by the choice-of-law provision in the parties' agreement if that provision is enforceable. *See Ohio Cas. Ins. Co. v. Travelers Indem. Co.*, 493 S.W.2d 465, 467 (Tenn. 1973). A party can enforce a choice-of-law provision if: (1) the provision was executed in good faith; (2) the state whose law is chosen has a material connection to the transaction; and (3) the chosen state's law is not contrary to a fundamental policy of a state having a materially greater interest and whose law would otherwise govern. *Town of Smyrna v. Mun. Gas Auth. of Ga.*, 723 F.3d 640, 645–46 (6th Cir. 2013) (citing *Vantage Tech., LLC v. Cross*, 17 S.W.3d 637, 650 (Tenn. Ct. App. 1999)); *Goodwin Bros. Leasing, Inc. v. H & B Inc.*, 597 S.W.2d 303, 306 & n.2 (Tenn. 1980).

Andujar and Batista argue that we should instead use a test from § 187(2) of the Restatement (Second) of Conflict of Laws that applies to contractual choice-of-law provisions. Unlike Tennessee law, which requires a material connection between the chosen state and the transaction, the Restatement requires a *substantial* relationship between the chosen state and the transaction *or the parties*:

> The law of the state chosen by the parties to govern their contractual rights and duties will be applied, . . . unless either
>
> (a) the chosen state has no substantial relationship to the parties or the transaction and there is no other reasonable basis for the parties' choice, or
>
> (b) application of the law of the chosen state would be contrary to a fundamental policy of a state which has a materially greater interest than the chosen state . . . .

Restatement (Second) of Conflict of Laws § 187(2) (Am. L. Inst. 1971).

Andujar and Batista assert that Tennessee adopted the Restatement test in *Goodwin Brothers Leasing, Inc. v. H & B Inc.* They are mistaken. In *Goodwin Brothers*, the Tennessee Supreme Court cited § 187(2) in a footnote when it adopted its own choice-of-law test. 597 S.W.2d at 306 n.2. This citation supports the notion that Tennessee may have *derived* its choice-of-law test from the Restatement, but it does not show that Tennessee has adopted

§ 187(2).  When Tennessee courts adopt provisions of the Restatement, they do so expressly. *See, e.g.*, *Hataway v. McKinley*, 830 S.W.2d 53, 59 (Tenn. 1992) (adopting the "most significant relationship" test of §§ 6, 145, 146, and 175 of the Restatement (Second) of Conflict of Laws); *Bowen ex rel. Doe v. Arnold*, 502 S.W.3d 102, 104 (Tenn. 2016) (adopting §§ 29 and 85 of the Restatement (Second) of Judgments for determining when to apply nonmutual collateral estoppel); *Street v. Calvert*, 541 S.W.2d 576, 583 (Tenn. 1976) (adopting the last-clear-chance doctrine as articulated in §§ 479 and 480 of the Restatement (Second) of Torts).  Tennessee has not expressly adopted § 187(2) of Restatement (Second) of Conflict of Laws.

True, we mentioned in an unpublished opinion that "Tennessee abides by the Restatement (Second) of Conflict of Laws." *Muhammad v. Deutsche Bank Nat'l Tr. Co.*, No. 21-6243, 2023 WL 3067756, at *2 (6th Cir. Apr. 25, 2023).  But in diversity cases applying Tennessee substantive law, we are bound by published decisions from Tennessee courts, not our unpublished ones.  *See Lindenberg v. Jackson Nat'l Life Ins. Co.*, 912 F.3d 348, 358 (6th Cir. 2018).

**IV.**

Having determined the appropriate choice-of-law test to use, we must decide whether the choice-of-law provisions in Andujar's and Batista's agreements with Hub Group are enforceable.  Because the agreements require Tennessee law to govern any disputes, to be enforceable, the parties must have executed the provisions in good faith, there must be a material connection between Tennessee and the transaction, and Tennessee law must not contradict the fundamental policies of New Jersey law if New Jersey's interest is materially greater.  *See Town of Smyrna*, 723 F.3d at 645–46.  The parties do not dispute that the choice-of-law provisions were executed in good faith.

We turn to the material-connection component.  "Material" means "having some logical connection with the consequential facts." *Blackwell v. Sky High Sports Nash. Operations, LLC*, 523 S.W.3d 624, 633 (Tenn. Ct. App. 2017) (citation modified).  For a material connection to exist between Plaintiffs and Hub Group, Tennessee "must have some direct and relevant connection with the transaction[s]." *Goodwin Bros.*, 597 S.W.2d at 306.  And the choice to

apply Tennessee law to any disputes "must be reasonable and not merely a sham or subterfuge." *Vantage Tech.*, 17 S.W.3d at 650 (citing *Goodwin Bros.*, 597 S.W.2d at 306).

For several reasons, no direct or relevant connection exists between the parties' transactions and Tennessee. *First*, the parties do not reside in Tennessee. Andujar and Batista lived in New Jersey the entire time they worked for Hub Group. Although Hub Group acquired a Tennessee-based company in Comtrak, Hub Group itself is a Delaware corporation with its principal place of business in Illinois.

*Second*, Andujar and Batista did not perform any services for Hub Group in Tennessee. They performed most services under their contracts in New Jersey and the rest in surrounding states. And they reported to Hub Group personnel in New Jersey. Andujar and Batista never reported to any of Hub Group's staff in Tennessee nor performed any services in Tennessee.

*Third*, Andujar and Batista did not execute or negotiate their respective contracts with Hub Group in Tennessee. They executed the agreements in New Jersey. Hub Group executed the agreements in Tennessee and New Jersey.

Because there is no material connection between Tennessee and the parties' transactions, the choice-of-law provisions in Andujar's and Batista's agreements with Hub Group are unenforceable.

Hub Group resists this conclusion. The company argues that a material connection to Tennessee exists because it: (1) acquired Comtrak and operates multiple facilities in Tennessee; and (2) executed some of its contracts with Andujar and Batista in Tennessee. We reject these arguments.

Start with Tennessee-based Comtrak and Hub Group's Tennessee facilities. Hub Group acquired Comtrak over a decade ago. The former company is now defunct. Hub Group emphasizes that it has maintained "significant business operations in Tennessee" after acquiring Comtrak because it has three locations in the state—two terminals and one fulfillment center. D. 23 at p.21. But the company has dozens of offices, terminals, warehouses, and fulfillment centers across the United States, Canada, and Mexico. And the 250 Hub Group workers in

Tennessee do not provide the full picture.  Hub Group has thousands of workers operating across the United States.

*Blackwell v. Sky High Sports Nashville Operations* is instructive.  The *Blackwell* court declined the request of a Nevada-based defendant to enforce a choice-of-law provision requiring the application of California law to the parties' dispute.  523 S.W.3d at 632–33.  The court concluded that there was no material connection with California even though the defendant's "parent company was founded in California over a decade ago and now operates several facilities there."  *Id.* at 633.  That same rationale applies here.

That Hub Group executed one or more of its contracts with Andujar and Batista in Tennessee does not change things.  To support its argument, Hub Group points to our decision in *EPAC Technologies, Inc. v. HarperCollins Christian Publishing, Inc.*, 810 F. App'x 389 (6th Cir. 2020).  But that case does not help Hub Group.  In *EPAC Technologies*, a book publisher and a book printer entered into a "highly negotiated" contract to purchase books.  810 F. App'x at 392–93.  The parties' contract contained a New York choice-of-law provision.  *Id.* at 399.  We analyzed the enforceability of the choice-of-law provision under Tennessee law.  *Id.*  And we determined that material connections existed between New York and the parties' transaction because EPAC's president and CEO—a signatory to the contract—was based in the company's New York office and negotiated the contract from New York.  *Id.* at 400.  Also, the defendant communicated with EPAC's officers in New York during the contract negotiations and even after the contract was terminated.  *Id.*

*EPAC Technologies* is distinguishable.  Unlike in *EPAC Technologies*, there is no evidence here that the parties negotiated the terms of the contracts, much less negotiated the terms in Tennessee.  *See id.* at 399.  Plus, Andujar and Batista have not worked with Hub Group's Tennessee personnel before or after executing their respective contracts.[1]

In sum, Hub Group cannot enforce the choice-of-law provisions in its contracts with Andujar and Batista because there is no material connection between Tennessee and the parties'

---

[1]We do not address Hub Group's efforts to analogize this case to *Lubinski v. Hub Group Trucking, Inc.*, 690 F. App'x 377 (6th Cir. 2017), because *Lubinski* has no bearing on our material-connection analysis.

transactions. We thus need not consider whether Tennessee law is contrary to the fundamental policies of New Jersey or if New Jersey's interest in the relevant issues is greater.

**V.**

For these reasons, we **REVERSE** the district court's judgment granting Hub Group's motion to dismiss and **REMAND** for further proceedings consistent with this opinion.